## BERNARD J. DAILY ET AL. *v.* NEW BRITAIN MACHINE COMPANY
### (12661)

HEALEY, SHEA, DANNEHY, SANTANIELLO and VASINGTON, Js.

Argued December 12, 1985—decision released July 22, 1986

*Joseph A. Mengacci,* for the appellants (plaintiffs).

*Robert L. Wyld,* with whom were *John A. Cvarch* and *Alan E. Lieberman,* for the appellee (defendant).

SANTANIELLO, J. This is an appeal from a decision of the trial court granting the defendant's motion for summary judgment in a products liability action. The plaintiffs claim that the trial court erred: (1) in granting the defendant's motion for summary judgment when there existed genuine issues of material fact; (2) by failing to recognize the plaintiffs' right to assert a common law cause of action; (3) in refusing to permit the plaintiffs to amend their substitute complaint and reply to special defenses to allege false misrepresentation and fraudulent concealment claims against the defendant; and (4) in not declaring the products liability statute of repose unconstitutional as violative of article first, §§ 10 and 20, of the Connecticut constitu-

tion, and the equal protection clause of the fourteenth amendment to the United States constitution. We find no error.

The pleadings, affidavits, documents and other information before the trial court on the motion for summary judgment revealed the following facts. The principal plaintiff,[1] Bernard J. Daily, was an employee of Harkness Industries (Harkness) located in Cheshire. In May, 1963, the defendant, New Britain Machine Company, leased a Model 75 injection molding machine to Harkness with an option to purchase. On May 22, 1964, Harkness exercised its option and purchased the machine. The machine was warranted to be free from defects in material and workmanship for a maximum period of one year. Harkness never parted with physical possession of the machine thereafter, and never purchased a service contract for it. The defendant serviced the molding machine five times in the seventeen years between the delivery to Harkness in May, 1963, and the date of injury to Daily on April 28, 1980. Each of these service calls was at the sole initiation, invitation and expense of Harkness.[2] On August 5, 1977, an employee of the defendant made a courtesy call to Harkness during which he prepared a safety check list. No services were performed on the machine, nor was any fee charged for the visit. On April 28, 1980, the plaintiff was severely injured when the Harkness molding machine closed upon his hand, causing permanent impairment and the need for numerous surgical procedures. At all times since the accident, the plaintiff was entitled to and has been receiving benefits under Connecticut's Workers' Compensation Act.

[1] Bernard Daily, the father of Bernard J. Daily, was also a party plaintiff in this action.

[2] The dates of the service calls were August 19, 1963, January 3, 1964, December 7, 1967, July 11, 1968, and August 30, 1972.

The plaintiffs instituted suit on March 22, 1982, and filed a substitute complaint on November 23, 1982. The defendant filed an answer and special defenses to the original complaint on December 15, 1982. Thereafter, on February 23, 1983, the defendant filed a motion for summary judgment alleging that the plaintiffs' claims were barred by General Statutes § 52-577a, the Connecticut products liability statute of limitations insofar as the defendant had parted with possession and control of the molding machine more than ten years before the plaintiffs had filed this action. On March 10, 1983, the plaintiffs objected to the motion because the pleadings were not closed. Thereafter, the defendant filed a revised answer containing special defenses on June 6, 1983. A reply was filed to the special defenses on June 24, 1983, and, at this point, the pleadings were closed. On July 7, 1983, the plaintiffs filed a motion in opposition to summary judgment claiming additional discovery was required to ascertain facts essential to justify opposition to the summary judgment motion. On July 11, 1983, the trial court ordered[3] the plaintiffs to file a counteraffidavit by August 8, 1983, and then set the motion down for hearing on the short calendar of August 15, 1983.[4] The plaintiffs filed a request to amend their substitute complaint and reply on August 11, 1983. No action was taken on the plaintiffs' request prior to the hearing on the motion for summary judgment which was conducted as scheduled on August 15, 1983, before the court, *James T. Healey, J.* Summary judgment was granted for the defendant on August 30, 1983, after the court determined that there were no material issues of fact in dispute and that, as

---

[3] On July 14, 1983, Joseph W. Doherty, deputy chief clerk, notified all counsel of record that the hearing on the motion for summary judgment would be heard on August 15, 1983.

[4] On August 5, 1983, the plaintiffs filed a memorandum of law opposing the defendant's motion for summary judgment and on August 8, 1983, they filed the affidavit of the plaintiff Bernard J. Daily.

a matter of law, the limited contacts the defendant had had with the molding machine did not constitute control of the machine for the ·purposes of § 52-577a.

## I

## SUMMARY JUDGMENT

The plaintiffs' first claim is that the court erred in granting the defendant's motion for summary judgment since there existed genuine issues of material fact.

The court concluded that the claims set forth in the substitute complaint did not raise a genuine issue of fact because the defendant had parted with possession and control of the molding machine more than ten years before the filing date of the complaint and, therefore, were time-barred by General Statutes § 52-577a.[5] The court carefully analyzed the meaning of the words "possession and control" and determined that it was uncontroverted that Harkness had been in physical possession and control of the machine since May, 1963.[6] The trial

---

[5] "[General Statutes] Sec. 52-577a. LIMITATION OF ACTION BASED ON PRODUCT LIABILITY CLAIM. (a) No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c) and (d), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product. . . ."

[6] The trial court in its memorandum of decision on the motion for summary judgment wrote: "For the purpose of this motion I must assume that the various allegations by the plaintiff as to negligence or other breaches of duty by the defendant are factually correct. There remains, however, the legal consequences which would flow therefrom.

"The limitation provision upon which the defendant relies is Connecticut General Statutes Section 52-577a which provides in part:

'(a) No product liability claim as defined in section 52-572m . . . may be brought against any party . . . later than ten years from the date that the party last parted with possession or control of the product.'

"Clearly the key words are 'possession or control,' for it is uncontroverted that the machine came into physical possession of Harkness approximately

court found there were only minimal contacts between the defendant and the molding machine, that the affidavits and supporting documents submitted by the plaintiffs were conclusory and further that it was undisputed that during the ten year period preceding the institution of this suit there were only two contacts made by the defendant's representatives, one service call requested by Harkness on August 30, 1972 followed by the safety check on August 5, 1977. Harkness leased

seventeen years prior to the accident, ownership vested in Harkness approximately sixteen years prior, and the only contacts that the defendant had with the machine within the ten years prior to the accident were the servicing of August 30, 1972 and the courtesy call of August 5, 1977. As the terms are not defined in the statute, they are to be accorded their ordinary meaning.

" 'Possession' is defined in Webster's Third New International Dictionary as: 'the act or condition of having in or taking into one's control or having at one's disposal . . . actual physical control or occupancy of property by one who holds for himself and not as servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself.'

"Black's Law Dictionary, Fifth Edition, gives this definition: 'The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment . . . . That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons.'

" 'Control' is defined in Webster's as: 'power or authority to guide or manage: directing or restraining domination.'

"Black's states the following: 'Power or authority to manage, direct, superintend, restrict, regulate, govern, administer or oversee . . . power or right to order or direct . . . exercise restraining or directing influence over.'

"To the same effect is Ballentine's Law Dictionary, Third Edition: 'To check, restrain, govern, have under command and authority . . . . A position of authority in direction and management.'

"To characterize the service call of August 30, 1972, or the courtesy safety check of August 5, 1977, as placing the defendant in either possession or control of the machine would stretch the English language to the breaking point. If the Legislature meant that isolated servicing done at the direction of the purchaser were to toll the statute of repose, it could readily have said so. Instead it used words which in common parlance are not understood to have such meaning. The meaning to be given words is clearly a matter of law and is exclusively within the function of the trier of law and not the trier of fact."

the machine in May of 1963 and later obtained title without relinquishing physical possession at any time. Each of the service calls was requested by Harkness, and in each instance, the defendant was responsive to each request and an employee of the defendant went to Harkness to perform work on the machine. In addition to the service calls, there was one courtesy call made on August 5, 1977. The defendant's employee prepared a safety checklist but performed no services and did not charge for the safety check. There was an express warranty given by the defendant to Harkness for a one year period only and was limited to defective material and workmanship. There was no service contract. Over the seventeen year period during which the defendant serviced the machine, Harkness was free to obtain service from others. The affidavits also show that the defendant had no power to influence what parts would be run on the machine, what molds would be employed, what hours the machine would be run, what maintenance would be performed, or who would service or operate the machine.

" 'A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. Practice Book § 384; *Yanow* v. *Teal Industries, Inc.,* 178 Conn. 262, 268, 422 A.2d 311 (1979); *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 377–78, 260 A.2d 596 (1969).' *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 11, 459 A.2d 115 (1983). See *Herman* v. *Endriss,* 187 Conn. 374, 446 A.2d 9 (1982). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. *Bartha* v. *Waterbury House Wrecking Co.,* supra,

11–12; *Farrell* v. *Farrell,* 182 Conn. 34, 38, 438 A.2d 415 (1980); *Rusco Industries, Inc.* v. *Hartford Housing Authority,* 168 Conn. 1, 5, 357 A.2d 484 (1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. 'Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380.' *Bartha* v. *Waterbury House Wrecking Co.,* supra, 12. 'The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist.' *Kasowitz* v. *Mutual Construction Co.,* 154 Conn. 607, 613, 228 A.2d 149 (1967), quoting *Boyce* v. *Merchants Fire Ins. Co.,* 204 F. Sup. 311, 314 (D. Conn. 1962); *Farrell* v. *Farrell,* supra, 39; *Plouffe* v. *New York, N.H. & H. R. Co.,* 160 Conn. 482, 490, 280 A.2d 359 (1971); *Hartmann* v. *Smith,* 158 Conn. 613, 614, 259 A.2d 645 (1969)." *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984).

The plaintiffs' characterization of the last service call of August 30, 1972, and the courtesy safety check of August 5, 1977, as placing the defendant in either possession or control of the molding machine was fanciful at best. The trial court, in explicating the definition of "control," was correct in stating that to interpret the facts of this case as placing control in the defendant "would stretch the English language to the breaking point." "It is not enough that one opposing a motion for a summary judgment claims there is a genuine issue of material fact; some evidence showing the existence of such an issue must be presented in the counter affidavit." *Hartmann* v. *Smith,* supra. The plaintiffs failed to submit adequate counteraffidavits and other documentary proof to support their claims

as required by Practice Book § 380.[7] Thus, because the facts as set out above are not disputed, the court was justified in concluding that the defendant was entitled to judgment as a matter of law.

## II

### EXCLUSIVITY AND MOTION TO AMEND

### A

The plaintiffs' next claim that the court erred in failing to recognize the common law claims of liability asserted in the complaint. They also argue that General Statutes § 52-577a acts to bar only their statutory rights and not those provided by the common law, and further, that the products liability act, General Statutes §§ 52-572m through 52-572r is not an exclusive remedy.

Our review of the substitute complaint dated November 23, 1982, discloses that the plaintiffs alleged only violations of statutory enactments. Paragraph seventeen of the complaint alleges: "The defendant is liable and legally responsible to the Plaintiff for the Plaintiff's injuries, losses and damages caused by the closing of the machine and the severe injury to his hand *by virtue of Connecticut General Statutes [§§] 52-572m through 52-572r . . . .*" (Emphasis added.) This paragraph clearly alleges only statutory liability. Paragraphs eighteen[8]

---

[7] "[Practice Book] Sec. 380. ——PROCEEDINGS UPON MOTION

"A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the court otherwise directs. The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings."

[8] Paragraph 18 of the substitute complaint, dated November 23, 1982, provides:

"Further the defendant is liable and legally responsible to the plaintiff for the plaintiff's injuries, losses and damages caused by the closing of the

and nineteen[9] of the complaint similarly specifically limit the plaintiffs' claims to statutory violations. By choice, the plaintiffs limited their complaint to statutory claims. To attempt to read into this complaint common law claims is to stretch the imagination. The court cannot read into a complaint claims other than those specifically set forth.

Furthermore, the products liability statute provides an exclusive remedy and the plaintiffs cannot bring a common law cause of action for a claim within the scope of the statute. General Statutes § 52-272n (a) states: "A product liability claim . . . may be asserted and *shall be in lieu of all other claims* against product sellers, including actions of negligence, strict liability and warranty for harm caused by a product." (Emphasis added.) If the legislature intended to allow a party to plead common law theories, it would not have used the mandatory language "shall be in lieu of." In construing a statute, the intent of the legislature is to be found not in what it meant to say, but in what it did say. *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979); *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975); *Schwab* v. *Zoning Board of*

machine and the severe injury to his hand *by virtue of Connecticut General Statutes [§§] 52-572m through 52-572r* in that defendant expressly and impliedly warranted upon the lease and sale of said machine as set forth in paragraph 4 hereof and for the continued useful life of the product, the merchantability and fitness of said machine for the purpose for which it was intended and breached its warranties . . . ." (Emphasis added.)

[9] Paragraph 19 of the substitute complaint, dated November 23, 1982 provides:

"Further the defendant is liable and legally responsible to the plaintiff for the plaintiff's injuries, losses and damages caused by the closing of the machine and the severe injury to his hand *by virtue of Connecticut General Statutes [§§] 52-572m through 52-572r* because the machine reached the plaintiff as a user without substantial change in the condition in which it was sold and because the machine was in a defective condition, as to its design and manufacturing, unreasonably dangerous to the plaintiff as user and continued to be so defective throughout the useful life of the product . . . ." (Emphasis added.)

*Appeals,* 154 Conn. 479, 482, 226 A.2d 506 (1967). In reference to this statute, the term "may" imports discretion; *Ridgeway* v. *Ridgeway,* 180 Conn. 533, 540, 429 A.2d 801 (1980); but the term "shall" refers to a mandatory requirement. *Hossan* v. *Hudiakoff,* 178 Conn. 381, 383, 423 A.2d 108 (1979). It seems clear then that the plaintiffs must select the statutory remedy, as it was intended by the legislature to be exclusive. See *Collucci* v. *Sears, Roebuck & Co.,* 585 F. Sup. 529, 532 (D. Conn. 1984); cf. *McIlwain* v. *Moser Farms Dairy, Inc.,* 40 Conn. Sup. 230, 232–33, 488 A.2d 102 (1985); see generally Yules, "An Analysis of Connecticut's New Product Liability Law," 56 Conn. B.J. 269, 270 (1982).

## B

The plaintiffs further claim that the court erred in refusing to grant their request to amend the substitute complaint and reply to the defendant's special defenses. They claim that they were given a short period of time within which to conclude discovery and that, as a result of information obtained while they were taking a deposition, they wished to file a substitute complaint giving rise to a new claim of fraudulent concealment and intentional misrepresentation. The trial court knew of the proposed amendments and made mention of the proposed new claims in its memorandum of decision. The plaintiffs acknowledge that the court has wide discretion in deciding whether to grant motions to amend but assert that in the present case, such discretion was abused.

On February 25, 1983, the defendant filed a motion for summary judgment. At the plaintiffs' request the motion lay dormant until July 7, 1983, when they filed a motion for denial of summary judgment claiming that they needed additional time to pursue discovery in order to present facts essential to justify opposition to

the motion for summary judgment. At a hearing conducted on July 11, 1983, the court, *O'Brien, J.,* ordered that the matter proceed and established a timetable for further motions. The court ordered the plaintiff to file a counteraffidavit by August 8, 1983, and assigned the motion for summary judgment for final hearing on the merits on August 15, 1983. The court further ordered that the parties were to advise the court of any problems with discovery by August 8, 1983. On August 10, 1983, the plaintiffs filed a request for leave to amend the substitute complaint in order to add three common law claims. In view of the untimely filing, the court proceeded to hear oral arguments on the motion for summary judgment as scheduled on August 30, 1983.

The plaintiffs claim that the court erred in refusing to grant the plaintiffs' request for leave to amend the substitute complaint. Amendments are allowed under Practice Book § 176[10] by three methods: (a) by order

---

[10] "[Practice Book] Sec. 176. ——AMENDMENT BY CONSENT, ORDER OF COURT, OR FAILURE TO OBJECT

"Except as provided in Sec. 182, a party may amend his pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(a) By order of court; or

"(b) By written consent of the adverse party; or

"(c) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sec. 120, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing, specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sec. 120 and with proof of service endorsed thereon, be filed with the clerk within the time specified above and placed upon the next short calendar list.

"The court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial. If the amendment occasions delay in the trial or inconvenience to the other party, the court may award costs in its discretion in his favor. For the purposes of this rule, a substituted pleading shall be considered an amendment."

of the court; (b) by written consent of the adverse party; or (c) by filing a request to amend which would automatically be granted if no objection is filed within fifteen days. This rule provides that if an opposing party has an objection and appropriately and timely files such objection, then the matter should be placed upon the next short calendar list. The section further states that "[t]he court may restrain such amendments so far as may be necessary to compel the parties to join issue in a reasonable time for trial."

The court in this case recognized that there already had been substantial delay from February 25, 1983, to July 11, 1983, and, as a result, took control of the proceedings, set down firm dates for anticipated motions and established a deadline of August 8, 1983, for pleadings and motions in anticipation of a court hearing on the summary judgment motion which was scheduled for August 15, 1983. The plaintiffs' request to amend was thus untimely under the circumstances and would have only contributed to further delay. The court has wide latitude in docket control and is responsible for the efficient and orderly movement of cases. Once the court had established a firm timetable for events to occur, the parties were bound by these dates. If the plaintiffs had additional motions they wished to file, they should have acted within the deadline.

The trial court also acted within its discretion in conducting the hearing on the summary judgment motion. At the time, there was no other motion before it and if it had waited another fifteen days, the delay would have violated Judge O'Brien's explicit and firm orders of July 11, 1983. Further, the record is devoid of any objection to the proceedings held on August 15, 1983. There was neither a claim of prejudice nor a request for continuance. The court therefore acted within its discretionary powers in proceeding at that time with the hearing.

The court made reference to the motion to amend in its decision: "The court is aware that there [are] pending proposed amendments to the complaint and to the reply to a special defense to which objection has been made and no action has as yet been taken. Assuming that the amendments are allowed despite the objections, a fair reading of them reveals only allegations of silence and failure to take affirmative action, which is a far cry from intentional misrepresentation and fraudulent concealment. The excerpt from the deposition of one of the defendant's employees to which the plaintiff refers in support of its position, taken in the light most favorable to the plaintiff, as it must be for the purposes of this motion, shows only knowledge, silence and lack of affirmative action on the part of the defendant. Therefore, even if the amendments were allowed, they would make no difference in my view of the matter." We agree with the trial court's actions and interpretations.

## III

### CONSTITUTIONAL CLAIMS

The plaintiffs finally claim that the Connecticut products liability statute of limitations is violative of article first, §§ 10 and 20, of the Connecticut constitution and the equal protection clause of the fourteenth amendment to the United States constitution. They allege that the statute creates two distinct classes of people, employees who are restricted to a ten year limitation of repose, and all others who can claim damages at any time provided they can prove that the harm occurred during the useful safe life of the product. They further claim that the limitation placed on the employees prematurely aborts their right to redress before an actual claim accrues. By this statute, it is claimed that employees are denied equal protection of the laws under the United States and Connecticut constitutions and

their constitutionally protected right to have open access to the Connecticut courts under article first, § 10, of the Connecticut constitution.[11]

## A

We turn first to the claim that General Statutes § 52-577a (a) denies employees equal protection of the laws. The plaintiffs argue that to deny employees the right to institute actions after ten years from the date of the relinquishment of possession and control of the product by manufacturers while allowing others the right to institute claims during the "useful safe life" of the product is invidious discrimination. The first class of persons consists of those individuals who are injured by products older than ten years and who are entitled to workers' compensation as a result of their injury. The second class of persons created by Connecticut's product liability statute of repose is composed of individuals injured by defective products who are not entitled to workers' compensation. The rights of the first class are extinguished ten years from the date that the manufacturer or party defendant last parted with possession or control of the product while those in the second class are able to establish that the injury occurred during the "useful safe life" of the product. Claiming that the distinction between the two classifications is discriminatory, the plaintiffs state that the classification has no rational basis in a legitimate state

[11] Although the plaintiffs did not articulate their constitutional claims as fully or as clearly as required, the contested issues were raised sufficiently to warrant review on appeal. "[T]his court, in matters of significant public moment where the public interest would best be served by a dispersal of all constitutional clouds over the act in question, will exercise that discretion and decide all closely related issues." *Gentile* v. *Altermatt,* 169 Conn. 267, 281, 363 A.2d 1 (1975); *Heiberger* v. *Clark,* 148 Conn. 177, 184, 169 A.2d 652 (1961); *West* v. *Egan,* 142 Conn. 437, 441, 115 A.2d 322 (1955); *Ruppert* v. *Liquor Control Commission,* 138 Conn. 669, 673, 88 A.2d 388 (1952).

objective and thus is violative of article first, § 20[12] of the Connecticut constitution and the equal protection clause of the fourteenth amendment[13] to the United States constitution.

"The equal protection provisions of the federal and state constitutions have the same meaning and limitations." *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982). The relevant inquiry is whether the classification and disparate treatment inherent in the statute of repose legislation bears a rational relationship to a legitimate state end and is based on reasons related to the accomplishment of that goal. *McDonald* v. *Board of Election Commissioners,* 394 U.S. 802, 808–809, 89 S. Ct. 1404, 22 L. Ed. 2d 739 (1969); *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). " '[T]he Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. *Barbier* v. *Connolly,* 113 U.S. 27 [5 S. Ct. 357, 28 L. Ed. 923] (1885); *Lindsley* v. *National Carbonic Gas Co.,* 220 U.S. 61 [31 S. Ct. 337, 55 L. Ed. 369] (1911); *Railway Express Agency* v. *New York,* 336 U.S. 106 [69 S. Ct. 463, 93 L. Ed. 533] (1949); *McDonald* v. *Board of Election Commissioners,* [supra]. The equal protection clause of that amendment does, however, deny to States the power to legislate that different treatment

---

[12] The constitution of Connecticut, article first, § 20, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[13] The constitution of the United States, amendment fourteen, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 [40 S. Ct. 560, 64 L. Ed. 989] (1920).' " *Gentile* v. *Altermatt,* supra, 295–96, quoting *Reed* v. *Reed,* 404 U.S. 71, 75–76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971).

During the period 1971 to 1975 there was a growing number of complaints concerning the problems of product liability claims and manufacturers' ability to obtain adequate insurance coverage. These complaints were nationwide and created a deep concern among state and national governments. As a result of these concerns a federal interagency task force was appointed to research the problem in depth and present recommendations. Involved in this nationwide study were federal agencies, consumers, manufacturers, insurers, and other interested parties. After a complete and thorough investigation considering the desires and needs of all segments involved, the task force made substantial recommendations for consideration by legislative bodies and affected interests. One of the recommendations of the task force was a system that would establish worker compensation as the sole source of recovery for a worker injured by a defective product in the course of employment or, in the alternative, the enactment of a statute of repose that would limit the responsibility of a manufacturer of workplace goods to ten years from the date of sale. U. S. Dept. of Commerce, Interagency Task Force on Product Liability: Final Report (1977), reprinted in 4A Frumer & Friedman, Products Liability (1984) Appendix G, App-1048 (1984). The Connecticut legislature considered various factors in arriving at its

ultimate decision to enact a statute of limitations, such as, reduced overall insurance costs of industry, limitation of total insurer "pay-out" (no recovery for pain and suffering), reduced cost of adjustment expenses, savings in legal fees for both manufacturers and workers, prompt payment to workers, and the absence of the requirement that workers need prove fault or liability. Workers' compensation as the sole recovery benefited workers by lowering transaction costs, by providing prompt payments, and by guaranteeing benefits even after a ten year period without the burden of proving fault as a basis for liability. On the other hand, nonemployees retained the right to sue and recover from the manufacturer provided: (1) they could prove the injury occurred during the "useful safe life" of the product and; (2) that there was fault as a basis for liability on the part of the manufacturer.

The classification made by the legislature in passing General Statutes § 52-577a is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation. The legislature had a legitimate problem before it which required examination, analysis and solution. The myriad problems associated with the growing crisis needed immediate attention. On the basis of the information available, the legislature assessed the relative merits of including a different statute of repose for workers eligible for workers' compensation and concluded that the benefits of the workers' compensation program justified a ten year limitation. This conclusion was bolstered by the fact that, at the time, many states were either considering or had already passed product liability tort reform laws incorporating a form of statute of limitations. See note, "The Constitutionality of Connecticut's Product Liability Statute of Repose," 6 U. Bridgeport L. Rev. 49 (1985). The Connecticut legislature was then under the belief that the actions of so many states, most of which

adopted the recommendations of the federal task force, would have an eventual dramatic effect on the intended reduction of insurance costs. This belief was consistent with the facts and was reasonable. See *Gentile* v. *Altermatt,* supra, 294–98. A majority of jurisdictions has upheld the constitutionality of similar statutes of repose against attacks on equal protection grounds. See, e.g., *Stutts* v. *Ford Motor Co.,* 574 F. Sup. 100, 104–105 (M.D. Tenn. 1983) (applying Tennessee law); *Dague* v. *Piper Aircraft Corporation,* 513 F. Sup. 19, 25 (N.D. Ind. 1980) (applying Indiana law); *Purk* v. *Federal Press Co.,* 387 So. 2d 354, 357–58 (Fla. 1980); *Costello* v. *Unarco Industries, Inc.,* 129 Ill. App. 3d 736, 473 N.E.2d 96, 101 (1984); *Scalf* v. *Berkel, Inc.,* 448 N.E.2d 1201, 1203–1205 (Ind. App. 1983). Cf. *Lankford* v. *Sullivan, Long & Hagerty,* 416 So. 2d 996, 999 (Ala. 1982); *Heath* v. *Sears, Roebuck & Co.,* 123 N.H. 512, 527, 464 A.2d 288 (1983); see generally McGovern, "The Variety, Policy and Constitutionality of Product Liability Statutes of Repose," 30 Am. U.L. Rev. 579, 606–10 (1981); annot., 25 A.L.R.4th, Product-Caused Injury—Period for Action § 5.

The plaintiffs argue that the legislation lacked a rational basis because the crisis in the product liability area has since subsided. We disagree. This statute was passed as part of a program to cure a serious nationwide problem. As a result of this statute and others, stability and an orderly process have been restored to the field. To now take a regressive step such as obviating the statute would probably regenerate a similar type of crisis as that which previously existed. This could result in an unending series of legislative actions which would have a "yo-yo" effect requiring new legislation each time a crisis occurs and then subsides. To undo this remedial measure could lead to the prior state of affairs which caused the original crisis. The reason-

ableness of an action taken by the legislature must be evaluated in light of the facts existing " 'at the time the law was enacted . . . .' " (Emphasis added.) *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 642, 427 A.2d 830 (1980), appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980), quoting *Rast* v. *Van Deman & Lewis Co.,* 240 U.S. 342, 357, 36 S. Ct. 370, 60 L. Ed. 679 (1916).

The plaintiffs also claim that the statute of limitations is irrational in view of the Model Product Liability Act's inclusion of a statute of repose based on the "useful safe life" of the product. Under the Model Act, the consumer is allowed to bring an action seeking recovery for injuries sustained against a manufacturer providing he can prove that the product is within its "useful safe life," regardless of the age of the product. To do so, however, he needs to satisfy two threshold requisites: (1) proof that the product is within the "useful safe life," and (2) proof that the product was so defective as to cause injury and damage to the consumer. Under the workers' compensation act, an employee need only file his claim to be entitled automatically to benefits under the workers' compensation laws. The average consumer is protected for the useful safe life upon proof of certain essential factors whereas the employee is also protected for the period of his employment, albeit to a lesser monetary degree. This trade-off of responsibilities and benefits potentially available between the two classes of people is certainly reasonable and protective of the rights of individuals within both classes. The federal task force concluded that it would be reasonable to limit the responsibility of manufacturers of workplace goods to ten years. Task Force Report, supra, App-1048. We agree with the task force recommendation and conclude that the statute provides a "rational basis" for the action of the legislature in furthering a legitimate state goal.

## B

The plaintiffs' final claim is that the statute of limitations is unconstitutional because it bars a cause of action even before it accrues, and, as such, is violative of article first, § 10, of the Connecticut constitution which provides: "[a]ll courts shall be open, and every person, for any injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." The plaintiffs claim that § 52-577a is unconstitutional as applied to them because, if workers are injured on the job by equipment older than the statutory limitations, their causes of action could be absolutely foreclosed even before they might arise. They argue that under these circumstances, workers are limited to workers' compensation benefits and are deprived of their state constitutional right to seek redress in the courts.

"Statutes of limitation are statutes of repose, and are such legislative enactments as prescribe the periods within which actions may be brought upon certain claims or within which certain rights may be enforced." Black's Law Dictionary (5th Ed. 1979), p. 835. The effect of the statute of repose is that, on occasion, a party's cause of action will be barred even before the action began to accrue. There are two principal reasons generally given for the enactment of a statute of repose: (1) it reflects a policy of law, as declared by the legislature, that after a given length of time a manufacturer should be sheltered from liability and furthers "the public policy of allowing people, after the lapse of a reasonable time, to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability"; *Johnson* v. *Star Machinery Co.*, 270 Or. 694, 701, 530 P.2d 53 (1974); and (2) to avoid the difficulty in proof and record

keeping which suits involving older machines impose. *Thornton* v. *Mono Manufacturing Co.*, 99 Ill. App. 3d 722, 725–26, 425 N.E.2d 522 (1981).

The purpose of the statute of repose contained in § 52-577a is, as noted above, to provide an orderly, equitable process by which the products liability crisis could be eased without unreasonably depriving individuals of their right of redress. The statute cuts off a product liability claim at a prescribed period of time after the product seller or manufacturer has parted with the product even though the repose period may expire before an individual has been injured and the cause of action has begun to accrue. " 'At times, it may bar the assertion of a just claim. Then its application causes hardship. The legislature has found [,however,] that such occasional hardship is outweighed by the advantage of outlawing stale claims.' " *Kennedy* v. *Johns-Manville Sales Corporation*, 135 Conn. 176, 179–80, 62 A.2d 771 (1948), quoting *Schmidt* v. *Merchants Despatch Transportation Co.*, 270 N.Y. 287, 302, 200 N.E. 824 (1936). For example, some of the evidentiary problems that may arise in connection with trying cases involving older products include the fact that an older product is more likely to have undergone misuse or alteration since manufacture, the possibility that a jury may inappropriately apply a standard reflecting subsequent technological development when assessing liability, and the fact that witnesses and documents may be difficult to obtain. See Martin, "A Statute of Repose for Product Liability Claims," 50 Fordham L. Rev. 745, 747–48 (1982).

We cannot accept the plaintiffs' claim that the product liability statute of repose, General Statutes § 52-577a, acts to deny them their right to redress for injuries in violation of article first, § 10 of the Connecticut constitution. The concerns raised by the plaintiffs that the statute of repose may outlaw a claim even

before it accrues has been addressed by this court in *Vilcinskas* v. *Sears, Roebuck & Co.,* 144 Conn. 170, 174–75, 127 A.2d 814 (1956), where we stated: "There is no reason, constitutional or otherwise, which prevents the legislature from enacting a statute, such as § 8324 [now § 52-584], which starts the limitation on actions for negligence running from the date of 'the act or omission complained of,' even though at that date no person has sustained damage and therefore no cause of action has come into existence. Indeed, such a provision accords with the purposes of statutes of limitation. One purpose is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution. *Anderson* v. *Bridgeport,* 134 Conn. 260, 266, 56 A.2d 650 [1947]."[14] Again, one of the purposes of a statute of limitations is to protect a defendant from finding himself in a situation where, because of the lapse of time, he is unable to gather facts, evidence, and witnesses necessary to afford him a fair defense. For these reasons, the time for bringing an action starts at the time of the occurrence of the alleged negligence and not at the time when the person was injured. "It is consonant with the purpose of protecting defendants against stale claims that the legislature should enact a statute, such as § [52-584 or 52-577a], which may on occasion bar an action even before the cause of action accrues." *Vilcinskas* v. *Sears, Roebuck & Co.,* supra, 175.

[14] General Statutes (Rev. to 1949) § 8324, (now § 52-584) provides: "LIMITATION OF ACTION FOR INJURY TO PERSON OR PROPERTY. No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, chiropodist, chiropractor, hospital or sanatorium, shall be brought but within one year from the date of the act or omission complained of, except that a counter-claim may be interposed in an action which has been brought within the year at any time before the pleadings in such action are finally closed."

The plaintiffs further argue that the "open court" provision of Connecticut's constitution restricted the power of the legislature to abolish a cause of action recognized at common law. This same claim was raised in *Gentile* v. *Altermatt,* 169 Conn. 267, 286, 363 A.2d 11 (1975), where we held that "article first, § 10, recognized all existing rights and removed from the power of the legislature the authority to abolish those rights in their entirety . . . [but] the legislature retains the power to provide reasonable alternatives to the enforcement of such rights. Where such reasonable alternatives are created, the legislature may then restrict or abolish the incorporated common-law or statutory rights." See also *Kluger* v. *White,* 281 So. 2d 1, 4–5 (Fla. 1973); 16B C.J.S. 509–10, Constitutional Law § 710; Ruben & Williams, "The Constitutionality of Basic Protection," 1 Conn. L. Rev. 44, 46 n.13 (1968), and cases cited therein. The claimed injuries suffered as a result of an alleged defective product, like injuries suffered in an automobile accident, could be linked to the preconstitutional common law action of trespass on the case and, as such, could be considered a constitutionally incorporated common law right. It is clear then that the framers of the state constitution intended that our courts be available for redress for the type of injury involved here. Reviewing the aggregate benefits associated with the workers' compensation laws, however, we conclude that the legislature provided a "reasonable alternative" to workers having product liability claims and that, as a result, did not enact legislation violative of article first, § 10, of the Connecticut constitution. In lieu of their right to seek access to the courts, injured workers may receive immediate payments through the workers' compensation alternative and, most importantly, fault does not become an issue. It should also be noted that the workers' compensation benefits were increased at the time of the enact-

ment of § 52-577a to provide additional compensation to workers, which indicates that the legislature deliberately enhanced this alternative to offset any disadvantage the statute of repose created.

There is no error.

In this opinion the other justices concurred.