[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, the plaintiff, the Connecticut Insurance Guaranty Association ("CIGA"), has sued the defendants, Rose Yocum ("Yocum"), Katy Industries Inc. ("Katy"), Wallace International Silversmiths, Inc. ("Wallace International") and the Connecticut Second Injury Fund, to obtain a declaratory judgment: (1 ) that CIGA, a non-profit, unincorporated legal entity created and existing under Connecticut General Statutes § 38a-836 et seq. (the "CIGA Act") to pay "covered claims" arising under insurance policies issued by insurers later determined to be insolvent, is not obligated to pay Yocum's pending claim for workers' compensation benefits under any insurance policy issued to Katy or Wallace International, her former employers, by their now insolvent insurer, American Mutual Liability Insurance Company ("American Mutual"); (2) that CIGA is similarly not obligated to pay Katy or Wallace International on account of Yocum's claim; and (3) that the Connecticut Workers' Compensation Commission ("WCC"), before which Yocum's claim for benefits is presently pending, does not have subject-matter jurisdiction to interpret and apply the CIGA Act. According to the plaintiff's Amended Complaint dated January 5, 1995, the instant controversy arises from the following facts.
Defendant Yocum is a resident of Wallingford, Connecticut, who, from 1958 through 1963, was employed at various times by defendants Katy and Wallace International. In a claim now pending before the WCC, Yocum alleges that she suffers from mesothelioma as a result of her exposure to asbestos while working for Katy and/or Wallace International. CT Page 4582
While Yocum was employed by Katy and Wallace International, both employers maintained workers' compensation insurance under one or more policies issued by American Mutual. On March 9, 1989, however, American Mutual was determined to be insolvent by a court of competent jurisdiction.
Under the CIGA Act, CIGA is obligated to pay any "covered claim" arising under a policy of insurance issued by an insurer later determined to be insolvent if the claim is filed with it, or is made the subject of a notice to be receiver or liquidator of the insolvent insurer, within two years from the date of the declaration of insolvency. Conn. Gen. Stat. §§ 38a-841
(1)(a)(ii)(B); 38a-842 (d)(3). Therefore, claims CIGA, once American Mutual was declared to be insolvent, CIGA became obligated to pay any covered claim arising under an American Mutual policy which would either be filed with it directly, or be made the subject of a notice to the receiver of American Mutual, on or before March 9, 1991.
By March 10, 1991, neither Yocum nor Katy nor Wallace International had filed with CIGA or given notice to the receiver of American Mutual of any claim for benefits on behalf of Yocum under any workers' compensation insurance policy issued to Katy or Wallace International by American Mutual. Therefore, claims CIGA, it is not now obligated to pay Yocum's pending claim, which was first filed after March 10, 1991, or to reimburse Katy or Wallace International for any expenses they may have incurred or payments they may be required to make on account of that claim.
Yocum has answered by way of special defense that she has done everything necessary to recover for Workers' Compensation benefits pursuant to Connecticut General Statutes § 31-294c.
CIGA now moves for summary judgment as to its obligation to pay Yocum's pending claim or to reimburse Katy or Wallace International for any expenses they may incur as a result of that claim. CIGA's argument, simply stated, is that since Yocum's claim was not filed on or before March 9, 1991, CIGA is not obligated to pay that claim because the CIGA Act absolutely bars any claim filed more than two years after the insurer was declared insolvent. CIGA has supported its motion with two Memoranda of Law.
Yocum has filed her own Memorandum of Law in opposition to CT Page 4583 CIGA's motion, and has filed a cross-motion for summary judgment, requesting either that judgment enter in her favor or, in the alternative, that this Court determine which of the other defendants in this action must pay pending her claim. Yocum argues first, that insofar as there is a conflict between the CIGA Act and the Workers' Compensation Act ("WC Act") with respect to the date by which claims must be filed, the WC Act should prevail. Here, then, she claims, she is entitled to have CIGA pay her claim because it was timely filed under the WC Act. Yocum also argues that there is a genuine issue of material fact as to CIGA's entitlement to judgment because of the doctrine of equitable tolling. Under that doctrine, claims Yocum, CIGA should not prevail because Yocum was not in a position to make her claim against CIGA before the expiration of the two-year time period. Finally, Yocum puts forth several constitutional arguments challenging the two-year time limit provision of the CIGA Act.
Katy has also filed a cross-motion for summary judgment, arguing that the liability of CIGA for workers' compensation claims is not subject to the two-year time bar in the CIGA Act.
 I
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Johnsonv. Meehan, 225 Conn. 528, 534 (1993) (citing Connecticut Practice Book § 384).
 II
CIGA was created in 1971, in part to pay "covered claims" which arise out of policies of insurance issued by insurers later declared to be insolvent.[1] The CIGA Act applies to most claims against insolvent insurers, with limited exceptions.[2]
The CIGA Act directs that CIGA "shall pay the full amount of any such claim arising out of a workers' compensation policy, provided in no event shall (B) [CIGA] be obligated to any policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy form from which the claim arises, or for any claim filed with the association after the expiration of two years from the date of the declaration of insolvency." Conn. Gen. Stat. § 38a-841 (1 )(a)(ii). The CT Page 4584 provision limiting CIGA's liability to claims filed within two years of a declaration of insolvency was added in 1981.
 III
As an initial matter, Katy's suggestion that the CIGA Act's two-year time bar provision was not intended to cover workers' compensation claims is unavailing. Only a strained reading of the CIGA Act could support the view that its two-year time bar for filing or giving notice of claims was not intended to cover workers' compensation claims. To the contrary, by adding the provision imposing the time bar to the very sentence in the statute which makes reference to workers' compensation claims, the Legislature clearly evidenced its intent that workers' compensation claims be subject to that provision. See generallySanzone v. Bd. of Police Commissioners, 219 Conn. 79, 189 (1991). ("[A] provision [in a statute] limits the entire [statutory] section or, as the case may be, the subsection within which it is incorporated.")
Katy argues, in the alternative, that when read in conjunction with the WC Act, the CIGA Act's two-year time bar provision should not be given effect. The WC Act, codified as Chapter 568 of the Connecticut General Statutes, provides that no claim for compensation can be made "unless a written notice of claim for compensation is given within one year from the date of the accident or within three years from the first manifestation of a symptom of the occupational disease[.]" Conn. Gen. Stat. § 31-294c. Thus the WC Act takes the nature of an occupational disease into consideration by allowing a claim to be made within three years of the first manifestation of illness, regardless of when exposure occurred. This provision, extending the time for filing from one to three years was made in 1980, pursuant to § 31-294 of the WC Act.
In 1986, § 31-355 (e) of the WC Act transferred liability for workers' compensation claims made against insolvent insurers to CIGA. Other claims for workers' compensation made against those who can not pay for other reason remain the obligation of the Second Injury Fund. Workers' compensation claims made against insolvent insurers explicitly became the responsibility of CIGA, with its applicable two-year time limit for filing.
Conceding that § 31-355 (e) makes CIGA responsible for workers' compensation claims made against insolvent insurers, CT Page 4585 Katy argues nonetheless that the two-year time bar in the CIGA Act does not apply to those same workers' compensation claims. Katy argues § 38a-841 (1)(a)(ii) should be read as creating a general rule regarding CIGA's liability and § 31-355 (e) as creating a specific rule regarding CIGA's liability for workers' compensation claims made against insolvent insurers. "[W]here there is a general provision and one addressed to a particular situation which may in certain circumstances be in conflict with the general law, the intention expressed in the particular provision will be given effect, and to that extent the general provision will be modified". Lamberti v. City of Stamford,131 Conn. 396, 401 (1941) (citations omitted). Since Yocum has made a workers' compensation claim against an insolvent insurer, §31-355 (e) would allow coverage despite the general two-year limit on CIGA's liability applied to other claims. Yocum was diagnosed with mesothelioma in December of 1991 and filed a claim on June 1, 1992, within the three-year window afforded by the WC Act. This being so, according to Katy, § 31-355 (e) should not bar coverage.
Katy's argument is flawed for the following reasons. The reference in § 31-355 (e) to the provisions of the CIGA Act includes the provision of the two-year time bar found in §38a-841 (1)(a)(ii)(B) of the CIGA Act.[3] Instead of exempting workers' compensation claims from the two-year time bar of the CIGA Act, § 31-355 (e) expressly provides that all the procedural provisions of the CIGA Act will indeed apply to those claims. The legislature, if it deemed such an exception necessary, would have inserted language to that effect into the CIGA Act when it transferred liability from the Second Injury Fund to CIGA for workers' compensation claims made against insolvent insurers.[4] Plainly, however, it did not.
"[T]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them. And it is always presumed to have intended that effect which its action or non-action produces." Inre Valerie D., 223 Conn. 492, 524 (1992). The above-described chronology of statutory provisions thus resolves any ambiguity as to legislative intent. This is not a case where the Legislature increased the time for filing a workers' compensation claim after adding the two-year time bar to the CIGA Act, unaware of the consequences when the two were read together.
IV
CT Page 4586
The defendants next argue that even if the typical claimant for workers' compensation benefits against CIGA must file or give notice of her claim within two years of the date on which her insurer is declared insolvent, Ms. Yocum's later-filed claim is saved from the CIGA Act's two-year time bar by the doctrine of equitable tolling. Under that doctrine, it is argued, the filing period for Ms. Yocum's claim did not begin to run until she first discovered or had reason to discover that she had a work-related injury, and thus a basis for filing the claim. The defendants assert that since Ms. Yocum has no valid basis for filing a workers' compensation claim until December 1991, when she first discovered that she suffered from mesothelioma, her April 1992 claim against CIGA was timely filed.
The plaintiff does not dispute the chronology of events leading to the filing of Ms. Yocum's claim. Even so, it argues that that claim cannot be saved by the doctrine of equitable tolling, for: (1) no Connecticut court has ever followed that doctrine; and (2) even if the doctrine were to be adopted in Connecticut, it could not be invoked to avoid application of a time bar like the one here at issue.
The doctrine of equitable tolling finds its origins in federal case law. Its well settled purpose is to "permit a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." Code v.Baxter Healthcare Corporation, 920 F.2d 446, 451 (7th Cir. 1990). The requirements for equitable tolling were first articulated inBailey v. Glover, 88 U.S. (21 Wall) 342 (1874). There, in a federal action to recover for fraud, the Court indicated that the doctrine operated as follows: "[W]hen there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud . . . and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing [.]" Id., 349-50. SinceBailey, the doctrine has been held to "embrace both what is sometimes called the discovery rule, which holds that the statute begins to run only after discovery of the facts constituting the violation; and the related rule that the statute does not begin to run when a plaintiff knows that he has been injured but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." CT Page 4587Gallop v. Commercial Printing Co., 42 Conn. Sup. 187, 192 (1992) (discussing, but not applying, the doctrine of equitable tolling).
So defined, equitable tolling is distinct and different from the more familiar doctrine of equitable estoppel. For there to be estoppel, the party sought to be estopped "must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do some act to his injury which he would not otherwise have done." Morris v. Costa, 174 Conn. 592, 599
(1978) (citations omitted). As applied in the statute-of-limitations context, equitable estoppel is ordinarily "invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation." Cerbone v. International Ladies' Garment Workers'Union, 768 F.2d 45, 50 (2d Cir. 1985). Equitable tolling, by contrast, has not been universally held to require proof of fraudulent or misleading conduct as the basis for invoking it.Compare Tragenza v. Great American Communications Co., 12 F.3d 717,721 (7th Cir. 1993) (equitable tolling is available "without fault by either party [whenever] the plaintiff does not have enough information to see within the required period of limitations") with Knowles v. Postmaster General, 656 F. Sup. 595,599 (D. Conn. 1987) (equitable tolling, like equitable estoppel, requires proof of fraudulent or misleading conduct by someone other than the plaintiff). See also Lampf, Pleva,Lipkind, Prupis Petigrow v. Gilbertson, 501 U.S. 350 (1991) (arguably suggesting a middle position — that there must at least be an underlying fraud, though it need not be actively misleading — by holding that "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there by no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.").
The Court, however, need not attempt to resolve the federal controversy over the applicability of equitable tolling principles to actions not based upon or delayed because of fraud. This is so because however that controversy is resolved, the doctrine of equitable tolling cannot be invoked to avoid the CT Page 4588 applicability of the time bar here at issue, which is a statute of repose, not a statute of limitations.
A statute of limitations extinguishes the right to prosecute an accrued cause of action unless it is filed within a specified period of time after injury occurs. A statute of repose, by contrast, restricts potential liability by limiting the time during which a cause of action can arise. Statutes of repose thus cut off the right of action after a specified period of time regardless of when the action accrues or when the plaintiff receives notice that his rights have been related. Blacks Law Dictionary, (6th Ed. 1990), p. 1411. See also Baxter v. Sturn.Ruges Co., 230 Conn. 335, 341 (1994).
Under federal law, it is well settled that neither equitable tolling nor equitable estoppel applies to statutes of repose, for "the very purpose [of such statutes] is to set an outer limit unaffected by what the plaintiff knows." Code v. BaxterHealthcare Corporation, supra, 451. Since a plaintiff's knowledge of facts supporting his right of action is immaterial to the legislature's judgment that after a certain period of time, no right of action should arise, it is apparent that the operation of the statute should not be suspended merely because the plaintiff has no knowledge or means of obtaining knowledge of his right of action.
Here, it is clear on the face of the statute that the two-year time bar in the CIGA Act is a statute of repose. It operates to cut off all liability for claims made more than two years after an insurer is declared insolvent, regardless of when the claim arose, who knew or had reason to know about it, or any other factor traditionally associated with a statute of limitations. This cut-off date is tied exclusively to the date of an event that has nothing to do with the nature of the claim or the knowledge of the claimant. Thus it is a statute of repose, which should not be avoided by any claimed failure by the plaintiff to be aware of the claim. The legislature, by passing the statute, decreed such knowledge to be irrelevant to the enforceability of the statute; hence the Court cannot refuse to enforce this statute by invoking its equitable powers.
 V
Yocum finally argues that the two-year time bar of the CIGA Act is unconstitutional under article first, §§ 10 and 20, of CT Page 4589 the Connecticut constitution and the equal protection clause of the fourteenth amendment to the United States constitution. Yocum alleges that the statute creates an arbitrary classification according to when a claimant's symptoms of injury manifest, in violation of the United States and Connecticut constitutions. Yocum further claims that claimants who are barred by the CIGA Act's statute of repose are denied their constitutionally protected right to have open access to the Connecticut courts under article first, § 10, of the Connecticut constitution.
 A
Yocum claims that the distinction made between the two classifications of claimants has no rational basis, and thus that it violates article first, § 20 of the Connecticut constitution and the equal protection clause of thefourteenth amendment to the United States constitution. Yocum describes the statutory distinction as are between "those manifesting symptoms within two years of the insurance company's insolvency, whose occupational diseases are covered if the procedural requirements are complied with, and those not manifesting symptoms until the two year period lapses, whose occupational diseases are not covered, whether the procedural requirements are complied with or not." Objection to Motion for Summary Judgment, p. 15.
As no inherently suspect class or fundamental right has been discriminated against, the statute needs only survive rational basis review. "The relevant inquiry is whether the classification and disparate treatment inherent in the statute of repose legislation bears a rational relationship to a legitimate state end and is based on reasons related to the accomplishment of that goal." Daily v. New Britain Machine Co., 200 Conn. 562, 577
(1986).
The Legislature has afforded an increased degree of protection to workers who make a claim under the WC Act and some degree of protection — coverage for two years from the date of insolvency — to a claimant under the CIGA Act. While one purpose of the CIGA Act is undoubtedly to protect claimants and policy holders, the two-year time bar provision therein serves the legitimate purpose of limiting stale claims and reducing the burden on the insurance — buying public in the form of increased premiums. CIGA funds its obligations by assessing its member insurers, who, in turn Pass the cost on to the public in the form of higher rates and premiums. The time — bar provision CT Page 4590 thus serves the additional legitimate purposes of setting reasonable limits on CIGA's liability and providing finality to the liquidation process for the insolvent insurer.
The two-year cutoff, furthermore, applies to all claims, not just to workers' compensation claims. The purpose of the CIGA Act is to compensate claimants who make claims against insolvent insurers for up to two years from insolvency, regardless of the nature of the claim. The rationale for the application of the CIGA Act's two-year time bar provision to claims made against insolvent insurers applies no less to workers' compensation claims than to any other claim against an insolvent insurer as well.
 B
Yocum also claims that the two-year cutoff contained in the CIGA Act is unconstitutional because it bars a cause of action even before it accrues, and, thus violates article first, §10, of the Connecticut constitution. In this state, however, such arguments have long been flatly rejected. "The effect of the statute of repose is that, on occasion, a party's cause of action will be barred even before the action began to accrue." Daily at 582. While this may cause hardship, the operation of a statute of repose such as the one found in the CIGA Act is, beyond question, constitutional. As discussed above, the CIGA Act's repose provision serves not only to set reasonable limits on CIGA's liability, but also to provide finality to the liquidation process.
Yocum further argues that the Connecticut constitution prohibits the legislature from abolishing a cause of action recognized at common law. Gentile v. Alermatt, 169 Conn. 267
(1975). "[A]rticle first, § 10, recognized all existing rights and removed from the power of the legislature the authority to abolish those rights in their entirety . . . [but] the legislature retains the power to provide reasonable alternatives to the enforcement of such rights. Where such reasonable alternatives are created, the legislature may then restrict or abolish the incorporated common-law or statutory rights." Id. at 286.
According to Yocum, her common-law claim against her employer, trespass on the case, could have been brought but for the WC Act. This was an acceptable abridgment, however, since the CT Page 4591 legislature simultaneously established the alternative of filing a workers' compensation claim. In 1971, the legislature abolished her right to file a claim against an insolvent workers' compensation insurer with the Second Injury Fund.[5] However, the legislature simultaneously established her right to file the same claim with CIGA. In 1981, when the two-year time bar provision was adopted, the Legislature altered her right to file a claim with CIGA. Since Yocum was unaware of her injury before the two-year time limit passed, she now has no redress
The CIGA Act's two-year time bar does not deprive Yocum of a remedy. The CIGA Act does not abolish any common-law rights Yocum may once have had, but rather provides an additional layer of protection within certain parameters, one of which is the two-year time bar, when an insurer is declared insolvent. "When a statute creates a cause of action that does not exist at common law, and simultaneously specifies a time limitation in which to bring that action, the remedy exists only during the prescribed period and not thereafter." Ambroise v. William Raveis RealEstate, Inc., 226 Conn. 757, 766 (1993). The CIGA Act was not a remedy available at common law, but instead is a creature of statute, designed to afford an additional layer of protection for claimants whose insurers have become insolvent. The CIGA Act, in detailing its obligations, also provides limits to its liability.[6]
Much weight is placed upon the Attorney General's opinion letter dated May 24, 1994, which concludes that the Second Injury Fund would not assume liability for workers' compensation claims filed against insolvent insurers after CIGA's two-year coverage ends. This issue is not before the Court.
 VI
For these reasons, CIGA's motion for summary judgment is granted as to its request for a declaration that it has no obligation to pay the defendants' claims on the grounds that they are time-barred. Accordingly, Yocum and Katy's cross motions for summary judgment are denied.[7]
Michael R. Sheldon, J.