DAVID G. KELEMEN, SR. *v.* RIMROCK CORPORATION
(13268)
(13269)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

---

Argued January 5—decision released May 24, 1988

*Lorraine W. Osborne,* with whom, on the brief, were *Daniel Shepro* and *Anne Marie W. Vetrosky,* for the appellants (plaintiff and intervening plaintiff).

*Theodore R. Tyma,* with whom were *George L. Holmes, Jr.,* and, on the brief, *James F. Kenney,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This appeal concerns the applicability of the ten year statute of repose for prod-

uct liability claims; General Statutes § 52-577a (a);[1] to an action filed by the plaintiff, David Kelemen, Sr., against the defendant, Rimrock Corporation.[2] The trial court, *Harrigan, J.,* found that the defendant had parted with possession and control of the product in question over ten years before the action had been initiated, thus barring the claim. We find no error.

The evidence before the trial court revealed the following facts. The plaintiff was employed by Teledyne Mt. Vernon Die Casting Corporation (Teledyne), the intervening plaintiff in this action, when he was injured by a filler cap that blew off a compression tank on May 23, 1978. On May 21, 1981, the plaintiff filed an action against the defendant, the manufacturer of the tank that had sold the compression tank to Teledyne. An amended complaint dated May 18, 1987, brought the action under Connecticut's product liability statutes, General Statutes § 52-572m et seq. The defendant raised a special defense of the statute of repose, alleging that it had parted with possession or control of the compression tank on May 18, 1971, when it placed the tank on a carrier for delivery to Teledyne. General

[1] General Statutes § 52-577a (a) provides: "LIMITATION OF ACTION BASED ON PRODUCT LIABILITY CLAIM. (a) No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c) and (d), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product."

[2] The defendant Rimrock Corporation impleaded for indemnity purposes the third party defendant L.W. Fleckenstein, Inc., a manufacturer of component parts for the compression tank at issue in this case. L.W. Fleckenstein, Inc., impleaded Buckeye Fabrication Company as a fourth party defendant under the same theory. Teledyne Mt. Vernon Die Casting Corporation (Teledyne), the plaintiff's employer, intervened in this action as a third party plaintiff to recover workers' compensation payments that it had made to the plaintiff. Teledyne has also appealed the trial court's ruling but did not file a brief in this appeal.

Statutes § 52-577a (a). The parties agreed to waive their right to a trial by jury on the special defense, and a hearing was held before the court to determine this issue. The defendant produced one witness, Arthur R. Prince, a longtime employee of the defendant, on this issue raised by the special defense. He testified that he had shipped the compression tank in question on May 18, 1971, from the defendant's plant in Columbus, Ohio, by loading it on a truck owned by Cooper-Jarrett, Inc., a motor carrier. Prince also testified that the contract provided for F.O.B., Columbus, Ohio; that the defendant did not pay shipping costs and that all its responsibility for the tank had ended when it had been loaded on the carrier. The defendant offered no evidence concerning when the shipment had arrived at Teledyne's place of business. The defendant's invoice contained the following language: "Terms: Net 30 Days – All Goods F.O.B. Columbus, Ohio." The invoice also contained the following language: "All orders accepted and all agreements are subject to delays occasioned by accident, strikes, fires and causes beyond our control. Our responsibility ceases when goods have been delivered to carrier. No goods accepted for return without our approval." The trial court concluded that the defendant had parted with possession and control of the pressure tank on May 18, 1971, and that the ten year statute of repose therefore barred the plaintiff's action.

The plaintiff lists five claims on this appeal, but these are more appropriately divided into three issues. The plaintiff contends that the trial court erred in: (1) applying the standards of possession and control under the Uniform Commercial Code (code) and *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 512 A.2d 893 (1986); (2) finding that a letter from the defendant did not constitute continuing control of the compression tank; and (3) holding that General Statutes § 52-577a (a) is constitutional.

# I

The plaintiff claims that the trial court erred when it applied the risk of loss provision of the code to arrive at its conclusion that the defendant parted with possession and control of the compression tank on May 18, 1971. He contends that the code does not define "possession" and "control" and that the risk of loss provision is not concerned with possession, making any reliance on that specific provision inapposite. On the other hand, the defendant asserts that the trial court correctly applied the standards of possession and control set out in *Daily* v. *New Britain Machine Co.*, supra. The trial court, although it acknowledged the *Daily* definitions extensively, appeared to rely heavily on General Statutes § 42a-2-509,[3] the risk of loss provision of the code. We conclude that such reliance was erroneous because that section was drafted to serve specific purposes that are unrelated to preconditions of statutes of repose. See J. White & R. Summers, Uniform Commercial Code (2d Ed. 1980) § 5-1. Nevertheless, applying the *Daily* definitions of possession and control to the F.O.B. provision of the contract leads us to the same conclusion as the trial court.

This court discussed the definitions of the words "possession" and "control" in *Daily,* a case where the plaintiff argued that a courtesy check and service call within ten years of a product liability claim constituted possession or control, leaving the defendant liable under

[3] General Statutes § 42a-2-509 (1) provides: "RISK OF LOSS IN THE ABSENCE OF BREACH. (1) Where the contract requires or authorizes the seller to ship the goods by carrier (a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier even though the shipment is under reservation, as provided in section 42a-2-505; but (b) if it does require him to deliver them at a particular destination and the goods are there duly tendered while in the possession of the carrier, the risk of loss passes to the buyer when the goods are there duly so tendered as to enable the buyer to take delivery."

the statute. There, the trial court held in its memorandum of decision that, "[a]s the terms are not defined in the statute, they are to be accorded their ordinary meaning." *Daily* v. *New Britain Machine Co.,* supra, 566–67 n.6. The *Daily* court then quoted a number of dictionary definitions of possession and control, which had been compiled by the trial court.[4] In *Daily,* we concluded that the actions of the manufacturer did not constitute possession or control as those words are commonly understood. Id., 569. We will undertake a similar analysis in this case.

Neither § 52-577a (a) nor the code define the words "possession" or "control." " 'Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.' *Doe* v. *Manson,* [183 Conn. 183, 186, 438 A.2d 859 (1981)]; *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 500, 423 A.2d 129 (1979)." *Johnson* v. *Manson,*

---

[4] In *Daily* v. *New Britain Machine Co.,* 200 Conn. 562, 566–67 n.6, 512 A.2d 893 (1986), the court noted the following definitions of possession and control as stated by the trial court below: " ' "Possession" is defined in Webster's Third New International Dictionary as: "the act or condition of having in or taking into one's control or having at one's disposal . . . actual physical control or occupancy of property by one who holds for himself and not as servant of another without regard to his ownership and who has legal rights to assert interests in the property against all others having no better right than himself."

" 'Black's Law Dictionary, Fifth Edition, gives this definition: "The detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment . . . . That condition of facts under which one can exercise his power over a corporeal thing at his pleasure to the exclusion of all other persons."

" ' "Control" is defined in Webster's as: "power or authority to guide or manage: directing or restraining domination."

" 'Black's states the following: "Power or authority to manage, direct, superintend, restrict, regulate, govern, administer or oversee . . . power or right to order or direct . . . exercise restraining or directing influence over."

" 'To the same effect is Ballentine's Law dictionary, Third Edition: "To check, restrain, govern, have under command and authority . . . . A position of authority in direction and management." . . .' "

196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787, reh. denied, 475 U.S. 1061, 106 S. Ct. 1290, 89 L. Ed. 2d 597 (1986). Webster's Third New International Dictionary defines "possession" as "the act or condition of having in or taking into one's control or having at one's disposal . . . . " "Control" is defined by Webster's as the "power or authority to guide or manage: directing or restraining domination." Accord *Daily* v. *New Britain Machine Co.,* supra, 566–67 n.6.

In deciding how to allocate control and possession of contract goods, contracting parties sometimes include trade terms such as F.O.B. The applicable code provision, General Statutes § 42a-2-319 (1), defines an F.O.B. shipment contract as follows: "Unless otherwise agreed the term F.O.B., which means 'free on board,' at a named place, even though used only in connection with the stated price, is a delivery term under which (a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in section 42a-2-504 and bear the expense and risk of putting them into the possession of the carrier . . . ." Since the contract provided for F.O.B. Columbus, Ohio, and no variation was made by mutual agreement, the contract to ship the compression tank is governed by the rules concerning F.O.B. shipment contracts. The words of § 42a-2-319 (1) contemplate that the seller puts the goods "into the *possession* of the carrier." (Emphasis added.) The carrier, usually an independent contractor and not an agent of either the buyer or the seller, has possession and control of the goods in the ordinary meaning of the words. The uncontroverted evidence in this case indicates that Cooper-Jarrett, Inc., had no relationship to either the plaintiff or the defendant except as an independent contractor. Under the ordinary meaning of the words "possession" and "control" and under § 42a-2-319 (1), the

carrier had actual physical possession of the compression tank and exercised control over it during its journey to the destination of the buyer.

It is essential to follow the precise direction of § 52-577a (a). It unequivocally states that no action can be brought later than ten years "from the date that the party *last parted* with possession or control of the product." (Emphasis added.) Prior to the revision of the statute of repose in 1979, the defendant had to prove only that the sale had occurred more than eight years before the action had been commenced by the injured party. See General Statutes (Rev. to 1979) § 52-577a.[5] The legislature, in 1979, changed the date when the repose period commenced from the date of sale to the date that the party last parted with possession or control of the product. It did not use the date that the buyer gained possession or control of the product and we must presume that it meant to make such a distinction. "Where the legislative intent is clear there is no room for statutory construction." *Hartford Hospital* v. *Hartford,* 160 Conn. 370, 376, 279 A.2d 561 (1971); see also *Johnson* v. *Manson,* supra, 316; *Houston* v. *Warden,* 169 Conn. 247, 252–53, 363 A.2d 121 (1975). "We have recognized that 'courts do not torture words to import ambiguity where the ordinary meaning leaves no room for it . . . .' *Heffernan* v. *Slapin,* 182 Conn. 40, 46, 438 A.2d 1 (1980)." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 98, 491 A.2d 368 (1985). The plaintiff argues that Teledyne did not have possession or control of the

---

[5] General Statutes (Rev. to 1979) § 52-577a (a) provides: "LIMITATION OF ACTION BASED ON STRICT TORT LIABILITY. (a) No action to recover damages for injury to the person or to real or personal property caused by any product in a defective condition shall be brought against one who manufactures, sells, leases or bails any such product but within three years from the date when the injury is first sustained, discovered or in the exercise of reasonable care should have been discovered. However, no such action may be brought later than eight years from the date of sale, lease or bailment of such product."

tank until it actually had received it. Even if factually correct, this point is irrelevant since the operative statutory focus is when the seller "last parted with possession or control of the product." The intent of the statute is to hold sellers of products liable for a certain time period after those products have left their possession or control and entered the marketplace. Presumably, a seller would have a chance to discover defects and take appropriate action to remedy them while the product remains in its possession. Considering the intent of the statute, whether the product is in the hands of the carrier or the buyer is irrelevant for purposes of computing the running of the statute of repose. The unambiguous language of the statute makes the legislature's intent obvious. "Where the words of a statute are clear, the task of a reviewing court is merely to apply the directive of the legislature . . . ." *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220, 448 A.2d 1344 (1982).

The plaintiff argues that the defendant did not part with control of the compression tank since, under certain conditions, a seller has the right to recall the goods under the code. See General Statutes § 42a-2-705 (seller may stop delivery when buyer is insolvent). He also points to General Statutes § 42a-2-310, which provides that payment is not due until the time and place at which the buyer is to receive the goods. The code also provides, however, that the buyer may instruct the carrier to deliver the goods to another person before they reach their destination. General Statutes § 42a-7-303. Thus, contrary to the claims of the plaintiff, the various code provisions do not unequivocally indicate that control is held by the seller until actual delivery to the buyer. The plaintiff attacks the use of the risk of loss provision to determine possession or control but then suggests using other general code provisions to establish such possession or control. The plaintiff cannot have it both ways. We reiterate that the appropriate

analysis entails reading the ordinary definitions of possession and control, as set forth in *Daily,* into the F.O.B. provision of the contract as that term is defined in the code. Accordingly, we conclude that when the defendant placed the compression tank in the possession of the carrier pursuant to an F.O.B shipment contract on May 18, 1971, it had parted with "possession or control" within the meaning of § 52-577a (a).

## II

The plaintiff's next claim is that even if the defendant had parted with possession and control when it placed the compression tank on the carrier, a letter dated July 2, 1973, evidenced continuing control of the tank. The defendant's letter notified Teledyne of a potential safety problem with the compression tank and recommended an inspection of the part and replacement if a failure or potential failure was detected. This form letter, sent to all customers of the defendant who had purchased such a tank, also related that beginning on August 1, 1973, the defendant's pressure tanks would be equipped with a newly designed lid. The trial court held that the letter was "more akin to the minimal contacts described by the *Daily* court." We agree.

"When the wrong sued upon consists of a continuing course of conduct, the statute does not begin to run until that course of conduct is completed. *Vilcinskas* v. *Sears, Roebuck & Co.,* 144 Conn. 170, 174, 127 A.2d 814 [1956]." *Handler* v. *Remington Arms Co.,* 144 Conn. 316, 321, 130 A.2d 793 (1957); see also *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 150, 161, 464 A.2d 18 (1983); *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 235, 429 A.2d 486 (1980). The plaintiff asserts that the letter demonstrates that the defendant exercised control because it maintained a file of those to whom the product had been sold, continued to be concerned about the product's safety, notified

buyers of harmful defects and advised buyers to undertake corrective repairs. A somewhat similar claim was asserted in *Daily* where the defendant had made one service call on request and one courtesy call within ten years of the initiation of the court action by the plaintiff. The *Daily* court held that there was no continuing control because there had been no service contract, the defendant had no influence over the day-to-day operation of the machine, the owner of the machine had been free to obtain service elsewhere, and the owner had requested the service call. *Daily* v. *New Britain Machine Co.*, supra, 568. The plaintiff in this case attempts to distinguish *Daily* on the grounds that the defendant in this case did not request any service and that the safety check was not routine. We disagree. The defendant's form letter was purely informational and left any decision concerning a future course of conduct solely to Teledyne. Teledyne was free to ignore any recommendations of the defendant and it had the option of obtaining service elsewhere. The defendant never heard from Teledyne again and never had anything further to do with the compression tank. The defendant's actions in this case exhibit even less continuing control than those of the defendant in *Daily,* where we held that there had been no continuing course of conduct. Cf. *Donovan* v. *A. B. Chance Co.,* Superior Court, judicial district of New London, Docket No. 75948 (April 8, 1986). We agree with the trial court's conclusion that the defendant's letter did not demonstrate the level of control that would toll the statute of repose.

III

The plaintiff's final claim is that § 52-577a (a) violates article first, §§ 10 and 20, of the Connecticut constitution and the equal protection clause of the fourteenth amendment to the United States constitution. We disagree.

The first constitutional challenge is based on the statute's alleged denial of access to the courts guaranteed by article first, § 10,[6] of our state constitution. This court considered and rejected an identical claim in *Daily* where we concluded: " 'It is consonant with the purpose of protecting defendants against stale claims that the legislature should enact a statute, such as § [52-584 or 52-577a], which may on occasion bar an action even before the cause of action accrues.' *Vilcinskas* v. *Sears, Roebuck & Co.,* supra, 175." *Daily* v. *New Britain Machine Co.,* supra, 584. The holding and reasoning of *Daily* control this issue and we refer the plaintiff to the comprehensive discussion in *Daily* for further elucidation of this issue. Id., 582–86; see *Arsenault* v. *Pa-Ted Spring Co.,* 203 Conn. 156, 158, 523 A.2d 1283 (1987).

The other constitutional challenge is based on an alleged violation of equal protection guaranteed by article first, § 20,[7] of the state constitution and the fourteenth amendment to the federal constitution.[8] The gravamen of the plaintiff's claim is that there is no valid distinction between those workers covered by workers' compensation, who are barred from initiating

---

[6] The constitution of Connecticut, article first, § 10, provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[7] The constitution of Connecticut, article first, § 20, provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry or national origin."

[8] The constitution of the United States, amendment fourteen, § 1, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

claims by § 52-577a (a) after ten years, and those workers not covered by workers' compensation, who may make a claim if the injury occurred in the "useful safe life" of the product. General Statutes § 52-577a (c).[9] This issue was also directly addressed by the *Daily* court, which concluded: "The classification made by the legislature in passing General Statutes § 52-577a is reasonable, not arbitrary, and rests upon a difference having a fair and substantial relation to the object of the legislation." *Daily* v. *New Britain Machine Co.*, supra, 579; see *Arsenault* v. *Pa-Ted Spring Co.*, supra. As with the issue of access to the courts, *Daily* controls this claim and further insight into the applicable equal protection analysis is set out in the *Daily* opinion. *Daily* v. *New Britain Machine Co.*, supra, 576–81.

The plaintiff has not advanced any compelling reason to overcome the well reasoned constitutional analysis in *Daily*. We agree with the trial court's conclusion that *Daily* controls the outcome of the plaintiff's constitutional challenges.

There is no error.

In this opinion the other justices concurred.

---

[9] General Statutes § 52-577a (c) provides: "The ten-year limitation provided for in subsection (a) shall not apply to any product liability claim brought by a claimant who is not entitled to compensation under chapter 568, provided the claimant can prove that the harm occurred during the useful safe life of the product. In determining whether the product's useful safe life has expired, the trier of fact may consider among other factors: (1) The effect on the product of wear and tear or deterioration from natural causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party."