[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO DISMISS
On April 25, 1991, the title to premises in Stratford, Connecticut, known as 21-23 California Street vested absolutely in Gateway Bank, formerly known as The BankMart, as a result of a foreclosure action. A certificate of this foreclosure was filed on the Stratford Land Records on May 5, 1991. On May 11, 1991, the plaintiff fell on a defective sidewalk adjacent to the property and was injured. An ordinance of the Town of Stratford makes it the responsibility of the adjacent landowner to keep the sidewalk in good repair.
On December 13, 1991, The BankMart was declared insolvent and closed. The Federal Deposit Insurance Corporation ("FDIC") was appointed receiver pursuant to 18 U.S.C. § 1821. Legal notice of this event was published in The Bridgeport Post on December 18, 1991, and on January 22 and February 19, 1992. These notices specified that claims by any creditor of The BankMart had to be filed with the claim agent for the FDIC on or before March 17, 1992, pursuant to 18 U.S.C. § 1821(d)(5)(C), or risk being disallowed by the receiver.
On November 5, 1992, Margaret Russell commenced this action against an entity listed on the summons as "Gateway Bank formerly known as The BankMart." The return date was November 24, 1992. On November 19, 1992, a lawyer, to whom the process served on Gateway/BankMart had been forwarded, wrote to Plaintiff's counsel advising him of the FDIC's receivership of Gateway/BankMart. On December 14, 1992, plaintiff's counsel prepared a Motion to Cite In the FDIC, which was granted by the court on January 19, 1993, with service to be effected on or before February 18, 1993. The Amended Complaint, adding a second count against the FDIC as receiver for BankMart was duly served on January 27, 1993, and counsel for the FDIC appeared on March 4, 1993. On July 21, 1993, the defendant FDIC moved to dismiss this action for lack of subject matter jurisdiction, citing the comprehensive provisions of12 U.S.C. § 1821(d), part of the Financial Institutions Reform, Recovery and Enforcement Act, commonly known as FIRREA. The plaintiff opposes dismissal. CT Page 8362
The parties appeared and argued this matter to the court on March 7, 1994. The uncontroverted facts are that the plaintiff had no actual knowledge about the takeover of BankMart until the November 19, 1992 letter from the former counsel for Gateway/BankMart. The land records of Stratford did not indicate an assignment of the California Street property to the FDIC or to any other entity than BankMart as of October 1992 when the lawsuit was filed. After the complaint was amended and the FDIC made a party in January 1993, the defendant FDIC appeared by counsel and thereafter on April 21, 1993, notified the plaintiff through her counsel that she must submit an administrative claim to be entitled to any recovery. The written notice made it clear that the last date for filing such claims had already passed on March 17, 1992. The plaintiff submitted her claim and supporting documentation to the receiver on May 13, 1993, but the claim was disallowed by the FDIC on May 26, 1993.
The plaintiff argues 1) that her claim is not one that requires her to exhaust her administrative remedy under FIRREA, and 2) that if the exhaustion requirement does apply, her claim should not be barred as untimely because she never received notice of the receivership and did not know of the necessity of filing an administrative claim until after the bar date.
THE EXHAUSTION REQUIREMENT
Congress enacted FIRREA in 1989 in response to the savings and loan crisis, to restore public confidence in banks and thrift institutions and to provide a mechanism for handling the mountain of claims emerging against failed financial institutions. In order to prevent these claims from overwhelming the courts, FIRREA created a comprehensive administrative procedure for adjudicating claims asserted against a failed bank or S L. Only after the proper and timely utilization of the administrative process may a claimant have access to the courts.[1]
The provisions of FIRREA ("the Act") require that any claim against a failed financial institution placed in receivership under the Act be filed in an administrative claims process with the FDIC before the passing of a deadline ("bar date") which must be at least ninety days from the first publication of monthly notice of the receivership. In this case, the bar date was March 17, 1992. Judicial determination of claims is available only in the federal courts, and only to those who file timely claims that are CT Page 8363 disallowed by the FDIC. 12 U.S.C. § 1821(d)(6)(A). While the FDIC has discretion to allow claims filed after the bar date, such decisions by the FDIC are not subject to judicial review.12 U.S.C. § 1821(d)(5)(C)(ii) and (6)(A).
The plaintiff argues that the notice provisions, and thus the exhaustion provisions, in the Act apply only to depositors and creditors of the failed institution, and that she is neither. But the Act, in general, refers to the method by which the FDIC is to determine "claims." It refers to the requirement that a mailed notice be sent to one who is discovered to be a "claimant" not otherwise listed in the books of the institution, 12 U.S.C. § 1821(d)(3)(C)(ii), a procedure followed here by the FDIC toward the plaintiff even though the bar date had passed. Also,12 U.S.C. § 1821(d)(13)(D)(ii) refers to "any claim relating to any act or omission of such [depository] institution or the Corporation as receiver," a provision which incorporates cases involving common law negligence as well as those involving sophisticated business relationships.[2]
The purpose of the Act — to provide a comprehensive and speedy method to wind up all of the affairs of the failed institution — is defeated if any claims against the institution are excluded from the scope of the administrative process and are allowed to proceed according to time frames of years, as set out in statutes of limitation of the several states, instead of months, as dictated by the federal Act.
Courts which have considered the issue have held that the Act, supported by its legislative history, requires exhaustion of administrative procedures, at least to the extent of initial presentation of claims to the FDIC, or other receiver appointed under the Act, prior to the assertion of a claim against the receiver in court. See, e.g., Tuxedo Beach Club Corp. v. CityFederal Savings Bank, 737 F. Sup. 18 (D.N.J. 1990); CircleIndustries v. City Federal Savings Bank, 749 F. Sup. 447 (E.D.N Y 1990); DeCrosta v. Red Carpet Inns International, 767 F. Sup. 694,696 (E.D. Pa. 1991).[3]
Moreover the fact that the plaintiff may seek to satisfy her claim out of the insurance of the failed institution rather than out of the institution's assets is not determinative. The Act places no qualifications upon the terms "act or omission" from which the Court could reasonably conclude that acts or omissions resulting in claims which are or could be covered by insurance are CT Page 8364 excluded. See, DeCrosta v. Red Carpet Inns International, Inc., supra, at 696. Also the practical difficulty of making a determination on a case-by-case basis of whether exhaustion is required depending on whether the insurance was actually in force and whether it provided coverage for such a claim is completely unworkable, and could not have been intended under the Act.
Furthermore Congress restricted jurisdiction over suits involving claims disallowed by the FDIC, mandating that only the federal courts have such jurisdiction, so that this court has no authority to decide this controversy. 12 U.S.C. § 1821
(d)(6)(A). See, e.g., 2974 Properties, Inc. v. Resolution TrustCorporation, 28 Cal Rptr.2d 667 (Cal.App. 2 Dist. 1994). Cf.,Resolution Trust Corporation v. Foust, 869 P.2d 183
(Ariz.App. Div. 1, 1993) (state and federal courts have concurrent jurisdiction over a lawsuit where the state court had obtained proper subject matter jurisdiction at the commencement of the action and a financial institution that was a party was declared insolvent and placed in receivership under FIRREA during the pendency of the action, and then sought to remove the case to federal court).
THE PLAINTIFF'S LACK OF NOTICE
The plaintiff failed to file an administrative claim until after the bar date because, she says, she was unaware of the FDIC's receivership of the defendant bank. She received no actual notice by mail pursuant to 12 U.S.C. § 1821(d)(3)(C) because she was not a depositor or other claimant whose address appeared on the institution's books. The FDIC did, however, publish a legal notice in the Connecticut Post once monthly for three consecutive months of the insolvency of BankMart and of the necessity for those with claims to present such claims to the FDIC as receiver on or before March 17, 1992, or risk the disallowance of such claims. The plaintiff argues that since she never knew of the bar date, she should not be bound by the time limits set forth in the Act for filing claims but only by the two year State statute of limitation on which she relied Conn. Gen. State. [Stat.] Sec. 52-584.
There are many instances when one cannot rely merely on the statute of limitation for a determination of the timeliness of a claim. Federal law aside, our own state statutes contain a number of situations when the identity of the defendant may create a situation where the time period for presenting a claim is foreshortened: a decedent's estate, Conn. Gen. Stat. Sec. 45a-395
CT Page 8365 (three to twelve months); a corporation in dissolution, Conn. Gen. Stat. Sec. 33-379(d) or 33-383(g) (four months or other time prescribed by the court); a municipality, Conn. Gen. Stat. Sec.13a-149 (90 days). In all of these situations, a claimant may be initially unaware that the potential defendant is one to whom an earlier presentation of a claim must be tendered in advance of and as a prerequisite to the filing of a lawsuit before the running of the statute of limitation. But the failure of the claimant to do so is nevertheless fatal to a subsequent court action.
The courts of Connecticut have long recognized and enforced properly crafted legislative policy designed to allow parties to plan their affairs with a degree of certainty, free from the disruptive burden of protracted and unknown potential liability, even if such a policy, on occasion, bars an action even before the cause of action accrues. Daily v. New Britain Machine Company,200 Conn. 562, 582 (1986); Baxter v. Sturm, Ruger Company, Inc.,230 Conn. 335, 344 (1994). Nor does such a result offend the concept of equal protection of the laws. Daily v. New Britain Machine Co., supra; Zapata v. Burns, 207 Conn. 496 (1988); Kelemen v. Burns,207 Conn. 599 (1988).
CONCLUSION
The limiting provisions of 12 U.S.C. § 1821 apply to the plaintiff's claims of personal injury against the defendant FDIC, and since it is receiver for BankMart, to the claims against Gateway/BankMart as well.
The defendant FDIC's Motion to Dismiss is granted.
PATTY JENKINS PITTMAN, JUDGE