[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These consolidated appeals arise out of the action of the Norwalk Zoning Board of Appeals (hereinafter "the Board") in response to appeals of orders of the Norwalk Zoning Inspector pursuant to General Statutes § 8-7. The appellants before the board and the defendants herein are the owners/operators (hereinafter "Owners") of a restaurant business located at 89 Rowayton Avenue in the Rowayton section of Norwalk. The property is bounded on the west by the Norwalk River and on the north and south by other commercial uses. The property is located in the Business No. 3 zone which permits a restaurant use as of right. Two buildings are located on the property; one houses a fish market which is not involved in these appeals and the other contains a restaurant which is the subject of these appeals.
The restaurant building has a legally nonconforming front set back because it is located 21.4 feet from the center line of Rowayton Avenue when § 118-230 of the Norwalk Zoning Regulations (hereinafter "the Regulations") mandates 35 feet. In 1992, the Owners constructed an open wooden deck on the rear of the restaurant building with the approval of the zoning and building authorities of the city. At that time, the zoning authorities deemed the rear yard to be the distance between the rear wall of the building and the rear lot line (Regulations, § 118-100, p. 11821) and determined that the rear setback was 10 feet. With such an interpretation it was then determined that there was more than sufficient distance to satisfy this requirement. In October 1996, without benefit of a permit, the Owners enclosed the deck with retractable plastic side curtains and a retractable awning roof, thus creating what the Owners called "an all weather dining patio". In 1997, the Owners filed with the Board an application for a variance of the rear setback requirement CT Page 5741-fk because the deck was built 8.5 feet into rear yard with its western most wall only 1.5 feet from mean high water line. Between the time the deck was completed and the installation of the deck enclosure our Supreme Court handed down McNally v. Zoning Commission, 225 Conn. 1 (March 9, 1993). The Norwalk zoning authorities interpreted this case as authority for fixing the mean high water line rather than the rear lot line as the line to which the rear setback should be measured. Apparently, this interpretation was based upon the fact that although the Supreme Court affirmed the trial court's decision on other grounds, it was deemed to have approved, sub silentio, the holding of the trial court that the rear setback was to be measured from the mean high water line of the Norwalk River. Whether that was a correct interpretation of McNally did not become an issue before the Board nor have the parties raised it as an issue in this appeal.[1] In any event, the date of the McNally decision apparently establishes the date at which the deck became nonconforming as to rear setback. The owners eventually withdrew that application. On the same date that they filed for the variance they also filed an appeal from the Zoning Inspector's denial of zoning approval for "legalization" of the deck enclosure. Shortly thereafter, the Zoning Inspector issued a cease and desist order directing removal of the enclosure as a violation of § 118-530C and 800D(1) of the Regulations. In the same notice, the Zoning Inspector ordered the removal of a service entry stoop located on the southerly side of the building as violative of our Supreme Court's decision in Bloom v. Zoning Board of Appeals, 233 Conn. 198 (1995). On March 31, 1998 the Zoning Inspector issued another cease and desist order directing the removal of eight striped diagonal parking spaces situated in the front yard of the property as being in violation of § 118-1220J of the Regulations.
The Owners appealed to the Board each of these orders and decisions of the Zoning Inspector which, after notice and public hearing, reversed the various actions of the Zoning Inspector except the order concerning the stoop, which it affirmed. On the strength of the Board's decision to permit the continuation of the retractable deck enclosure, on February 19, 1999 the Zoning Inspector issued a certificate of zoning compliance which permitted replacement of the retractable enclosure with a permanent frame and glass structure. The same plaintiffs appealed that decision to the board which after notice and hearing, denied the appeal and affirmed the decision of the Zoning Inspector.
Aggrievement
The plaintiffs offered testimonial and documentary evidence of their status as aggrieved parties. The court finds that Willis Cavanaugh, CT Page 5741-fl Hillard Bloom and the estate of Norman Bloom are statutorily aggrieved parties by virtue of their ownership of real property which abuts the premises involved in these appeals. No evidence was offered to prove the aggrieved status of Jacqueline Cavanaugh and therefore she is found not to be aggrieved. Goldfeld v. Planning and Zoning Commission,3 Conn. App. 172 (1985); G.S. § 8-8 (1).
Scope of Review
Within the framework of the court's review of the action of a zoning board of appeals in reversing or affirming a decision of a zoning official pursuant to G.S. § 8-7 on the familiar grounds of illegality, unreasonableness or abuse of discretion, lies the duty of the court to assess whether the board correctly applied the zoning regulations to the facts of the case, Molic v. Zoning Board of Appeals,18 Conn. App. 159, 165 (1989) and whether there was substantial evidence in the record to reasonably support the board's decision. Torsiello v.Zoning Board of Appeals, 3 Conn. App. 47, 51 (1984). "A reviewing court may only consider the reasons given by the zoning authority to determine whether the record and the application of the zoning regulations support those reasons. Manchester v. Zoning Board of Appeals, 18 Conn. App. 69, 72-73 (1989). Where, however, the authority fails to present a formal collective statement of reasons the court must search the entire record to find a basis for the authority's decision. Parks v. Planning andZoning Commission, 178 Conn. 657, 662 (1979). "In such a case individual reasons "given by certain members of the commission [do] not amount to a formal collective statement of the commission'; Protect Hamden/NorthHaven From Excessive Traffic and Pollution, Inc. v. Planning and ZoningCommission, 220 Conn. 527, 545 (1991) and "are not available to show the reason[s] for, or the ground[s] of, the commission's [decision]." "Welchv. Zoning Board of Appeals, 158 Conn. 208, 214 (1969) "West HartfordInterfaith Coalition, Inc. v. Town Counsel, 228 Conn. 498, 574 (1994)."
In the appeals involving the retractable deck enclosure, the service entry stoop and the diagonal parking spaces the Board passed the following motion.
 Mrs. Griesmer moved that the appeal be sustained on the basis that a regulation, specifically § 118-800D(1), is sufficiently ambiguous that the interpretation could be realistically be decided in favor either way, and that indicates that the relief must go to the property owner until such time that this regulation is clarified. CT Page 5741-fm
In the appeal involving the permanent (as opposed to retractable) deck enclosure the Board passed the following motion.
 "Ms. Greismer moved to deny the appeal and uphold the Zoning Inspector's approval of permanent all season enclosure improvement to existing rear dining deck of restaurant (§ 118-1410A1) in Business No. 3 zone for property located at 89 Rowayton Avenue."
The parties have not briefed the issue but as a threshold part of its review function, the court must determine whether such a statement constitutes a "formal collective statement of reasons" within the meaning of our established case law. The court concludes that it does not.Felsman v. Zoning Commission, 31 Conn. App. 674, 678 (1993). The Board found no facts but rather purported to interpret § 118-800D(1) of the Regulations. An interpretation that is based wholly upon a perceived need to resolve a legislative ambiguity in favor of a property owner simply because of the ambiguity, is no interpretation at all. Thus, the court must search the record to determine if there was a proper basis for the board's decision. Norwood v. Zoning Board of Appeals, 62 Conn. App. 528,529 n. 3 (2001). Unlike the first motion above, the second motion does not even disclose an effort to give a reason.
The court will undertake to consider each of the four subject matters in order.
Retractable Deck Enclosure
Implicit in the board's decision is its determination that § 118-800D(1) does not prohibit the erection of either the retractable enclosure or a permanent enclosure of the deck.
"Ordinarily, the construction of a statute by the agency charged with its enforcement is entitled to considerable deference. `However, the construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference'". ConnecticutLight Power Co., v. Dept. Public Utility Counsel, sic 210 Conn. 349
(1989); "Schlumberger Technology Corp. v. Dubnow, 202 Conn. 412, 423
(1987); Accord Qunninpiac Council Boy Scouts of America, Inc. v.Commission on Human Rights and Opportunities, 204 Conn. 287, 295 (1987). . . . Where administrative interpretations lead to a result that is contrary to the language and purpose of the statute, it is within the CT Page 5741-fn authority of this court to construe the statute in a manner consistent with its language and purpose." (Alternate citations omitted). Lockwoodv. Professional Wheel Chair Transportation, Inc., 37 Conn. App. 85, 92
(1995).
There is nothing in the record or briefs that indicates that § 118-800D(1) has ever been subjected to judicial scrutiny.[2] The court then must apply well recognized principles of statutory construction. Words used in statutes shall be construed according to the commonly approve usage of the language. G.S. § 1-1; Martone v. Lensink,207 Conn. 296, 302 (1988). When the language used by the legislature is plain and unambiguous, there is no room for statutory construction by the courts and the statute will be applied as its words direct. Verrastro v.Sivertsen, 188 Conn. 213, 220 (1982); Kelemen v. Rimrock Corporation,207 Conn. 599, 606 (1988). "In construing a statute, common sense must be used, and courts will assume that the legislature intended to accomplish a reasonable and rational result." King v. Board of Education,203 Conn. 324, 332-33 (1987). "A statute should not be interpreted to thwart its purpose." Kron v. Thelan, 178 Conn. 189, 192 (1979). The court cannot read into the terms of a statute something which manifestly is not there in order to reach what the court thinks would be a just result.Johnson v. Mansen, 196 Conn. 309, 315 (1985). "A statute does not become ambiguous because the parties disagree as to its meaning." Commissionerv. FOIC, 204 Conn. 609, 620 (1987). It is a basic rule of statutory construction that a statute is to be construed as a whole. Rustici v.Stonington, 174 Conn. 10, 13 (1977); Martone v. Lensink, supra at 302. "A statute should be construed so that no word, phrase or clause will be rendered meaningless." Verrastro v. Sivertsen, supra at 221.
Although the plaintiffs challenge the Board's decision on several grounds the Board assigned only a single ground for its decision, namely the ambiguity of § 118-800D(1). Accordingly, the only issue before the court regarding the deck is the proper interpretation of the regulation. That regulation provides as follows:
D. Nonconforming Structures
 (1) A nonconforming structure shall not be enlarged or altered if the result would be an increase in the extent to which the structure does not conform to these regulations. A nonconforming structure may be enlarged or altered, provided that the enlargement or alteration conforms to these regulations.
This regulation must be considered in conjunction with § 118-800A CT Page 5741-fo which provides as follows:
A. Purpose and Intent
 There exists throughout Norwalk lawful lots, structures and uses of land and structures which are nonconforming because they do not comply with these regulations as originally adopted or subsequently amended. The purpose of this regulation is to permit nonconformities to continue, but strictly limit the extent to which nonconformities may be established, continued, expanded or altered. This regulation is intended to bring nonconforming uses into conformity with regulations as quickly as the fair interests of the parties will permit.
The plaintiffs argue that the retractable enclosure constitutes an enlargement of the deck which results in an increase in the extent of the nonconforming rear setback. Although the enlargement is clearly vertical in its prolongation it also elongates horizontally for the entire width of the deck. The plaintiffs thus argue that the enclosure is a horizontal expansion of the deck rather than a vertical one. No portion of the enclosure protrudes beyond the structural limits of the deck.
The Owners argue that (1) § 118-800(D)(1) and § 118-800(A) must be liberally construed, (2) existing case law supports their position but the plaintiffs' case law does not; (3) the deck is protected by § 8-13a; and, (4) the plaintiffs are barred by the terms of a settlement agreement in a prior case.
The issue of statutory interpretation is whether sections 118-800D(1) and 118-800A prohibit the erection of an enclosure on a setback nonconforming deck which extends both vertically to ceiling height and horizontally the entire width of the deck. The necessary starting point is section 118-800D(1) which prohibits enlargement of nonconforming structures if the result is extension of the nonconformity. See, Bradleyv. Zoning Board of Appeals, 165 Conn. 389, 394 (1973). The Owners contend that § 118-800A relaxes the prohibition contained in § 118-800D(1) by "contemplate[ing] the expansion of nonconformities" such as this deck. The court finds that § 118-200A is nothing more than a declaration of existing law with regard to the preservation of nonconforming uses and structures. See, G.S. § 8-2 (a). The last sentence of the section reflects the well established policy of Connecticut zoning law that nonconformities are to be brought into CT Page 5741-fp conformity as quickly as possible. Petruzzi v. Zoning Board of Appeals,176 Conn. 479, 484 (1979). The third sentence expresses the intent of the Norwalk Zoning Commission to "strictly limit" the "extent to which nonconformities may be . . . expanded."
Resort to dictionary definitions of key operative terms reveals the following. The word "strict" is defined as "following or enforcing the rules with great care; rigidly maintained; implies exact, undeviating conformity to standard rules." Webster's New World Dictionary of the American Language, 2nd Ed., 1979 at 1410. "Limit" is defined as "to confine within bounds; the point, line or edge where something must end." Id. at 820. It is not insignificant that both subsections A and D(1) regulate the "extent" of the enlargement. The word "extent" is defined as "the space, amount, degree to which anything extends; size; length; breadth; range or limits anything; scope, coverage." Id. at 496.
In the Owners' view any vertical or horizontal enlargement may be made to a structure which is nonconforming as to its setback so long as the enlargement does not further encroach upon the setback. In the plaintiffs' view any such enlargement constitutes a further encroachment upon the setback in and by itself.
Construction of the statutory language must be informed by our case law to the extent that the case law involves legislation which is similar to Norwalk's. In Jobert v. Morant, 150 Conn. 584, 587 (1963), the enclosure of an open restaurant patio in a residential zone which was designed to enable use in inclement weather was deemed to constitute an unlawful extension of a nonconforming use. The court found that the new use would violate the third prong of the three prong test which our courts follow to determine if a new activity is within the scope of a nonconforming use. Zachs v. Zoning Board of Appeals, 218 Conn. 324, 332 (1991). This court notes that that test has not been extended to nonconforming structures. Bauer v. Waste Management of Connecticut, Inc., 234 Conn. 221,243 (1995).
In Jachym v. Planning and Zoning Commission, 8 Conn. L. Rptr. 3, 77 (1993), Hurley J.) the planning and zoning commission approved a second floor addition to a garage that had a nonconforming rear yard. The addition would encroach no further on the setback. The applicable regulation "prohibited a new nonconformity or increased encroachment". The court held that the commission did not act unreasonably in finding that a vertical addition did not increase a horizontal encroachment. The court gave administrative deference to the commission's interpretation that such a vertical addition constituted neither a new nonconformity nor CT Page 5741-fq an increased encroachment because the record showed that the commission had consistently interpreted the regulation in that manner. BridgeportHospital v. Commission on Human Rights and Opportunities, 232 Conn. 91,109 (1995). The Owners' reliance on Jachym is clearly misplaced, a.) because the language of the regulation is significantly different, and b.) the record here gives no indication that the Board had ever previously interpreted § 118-800D(1).
In Cirullo v. Zoning Board of Appeals, 118 Conn. L. Rptr. 309 (1996, Hurley J.) the property owner sought to increase the height of a dormer which lay below the roof line of a house which had a legally nonconforming front yard setback. The court found that there would be no substantial addition to the dormer nor would a structure be built where none previously existed. The court held that increasing the dormer's height where the dormer would remain under the roof line of the house to which it was attached would constitute an intensification of an existing nonconformity, not an unlawful expansion. In doing so, the court applied a standard that our courts have applied to nonconforming uses rather than structures. Planning and Zoning Commission v. Kraft, 12 Conn. App. 90, 96
(1987). Unlike in Cirullo, there is no question but that the Owners here have substantially added to the deck both vertically and horizontally and have added walls and a roof where none existed. The Owners' attempt to bring this case within the penumbra of the Cirullo case is unavailing. The intensification rule applies to a use, not a structure. Bauer v.Waste Management Connecticut, Inc., supra at 243.
After reviewing the applicable case law the court concludes that there does not exist in Connecticut any controlling authority on the issue of whether an enlargement which extends both vertically and horizontally over a setback nonconforming structure but does not encroach further into the setback constitutes an unlawful expansion of the nonconforming structure. Resort to the case law of other jurisdictions reveals that the cases go both ways on the issue. One line of cases permits such enlargements on the grounds that the addition does not increase the foundational footprint and therefore does not increase the encroachment.Goldhirsh v. Mehea, 590 N.E.2d 709 (MA. 1992). The second line of cases prohibits the enlargement on the grounds that the addition is a new structure and by virtue of that, the nonconformity is increased.Application of Rogers, Et al, 170 N.Y.S.2d 644 (1958). While reaching the same result as the New York court, the Minnesota Supreme Court has predicated its rationale on the principle that such an enlargement would thwart the stated policy of zoning to eliminate, gradually, all nonconformities. County of Lake v. Courtney, 451 N.W.2d 338 (Minn. 1990). CT Page 5741-fr
It is noted that the Norwalk Regulations do not define either structure or building. Our courts have defined "structure" "as any production or piece of work artificially built up or composed of parts; joined in some definite manner". Hendryx Co. v. New Haven, 104 Conn. 632, 640 (1926).
"Building" is defined as "anything that is built with walls and a roof'. Webster's New World Dictionary 2nd Col. Ed., (1979) at 185; See, Kershaw v. Zoning Board of Appeals, 21 Conn. L. Rptr. 43 (122197, Mihalakos, J.). By itself, the unenclosed deck is clearly a structure not a building. However, once it is enclosed with a wall and roof it becomes a building. Such a transformation changes the very nature of the object and enlarges its bulk. To be sure, building bulk is regulated by § 118-230 of the regulations and no claim has been made that the enclosure will violate any of the bulk restrictions except rear yard setback. Nevertheless, bulk must be considered in connection with the expressed language of § 118-800A and D(1). Application of the rules of statutory construction discussed above to the legislation in question evinces a strong legislative intent on the part of the Norwalk Planning and Zoning Commission to implement the long established policy in Connecticut to reduce and abolish all nonconformities as quickly as the fair interests of the parties will permit. Hyatt v. Zoning Board ofAppeals, 163 Conn. 379, 383-384 (1972). Increasing the bulk of a nonconforming structure by the addition of walls and a roof frustrate and defeat that policy by making the structure more permanent and therefore more difficult to remove. "[F]undamental structural improvements will only serve to perpetuate "the nonconformity". Id. at 384. The court cannot envision a more fundamental improvement to a structure than the addition of a roof and walls.
In the final analysis, this court is of the view that the retractable enclosure and, per force, the permanent enclosure constitute an impermissible expansion of the nonconforming deck.
Section G.S. § 8-13a.
As a third ground of affirmance of the Board's decision the Owners state that the deck is protected by the provisions of § 8-13 (a).[3]
The Owners argue that the deck became setback nonconforming in 1993 and because of the passage of more than three years without any enforcement action being taken it has achieved some sort of grandfathered protection from the application of § 118-800A and D(1). Both the Owners' brief and their oral argument were devoted entirely to the proposition that CT Page 5741-fs § 8-13a applies to this deck. At no time have they suggested how it authorizes the deck enclosure. The deck is acknowledged by the Zoning Inspector to have acquired nonconforming status. Section 8-13a adds nothing to this status. The Owners urge the court to adopt the result reached by the Pennsylvania Supreme Court in Yocum v. Burrow ofKingston, 41 A.2d 601 (1958) wherein the court permitted conversion of an open porch into a liveable room when the porch was nonconforming as to front setback. The court cannot accept this case as authority for the approval of this deck enclosure. First, while it is not clear from the opinion, the likelihood is that the porch had a roof supported by timbers, a crucial distinction; second, the court offers no analysis or rationale for the result which it reached. This court is not persuaded.
The Settlement Agreement
The Owners claim that the plaintiffs are barred from challenging the validity of the enclosure because of a certain settlement agreement to which they are parties. The agreement in question was entered into on December 5, 1996 in order to resolve a certain civil action entitledRaymond, Et al v. Conroy, CV95-0328350. In the agreement, the plaintiffs who are also plaintiffs in this action, "acknowledge[d] the validity of all previously issued permits (building and/or zoning) with respect to the defendants' property and acknowledge[d] that the present uses of the property conform with zoning." (Emphasis added). The agreement also provides, inter alia, that "this agreement shall not be utilized for any purpose other than the matters hereinafter described."
The Owners argue that the first provision somehow operates to legitimize the deck enclosure because the enclosure was erected in October 1996, two months before the agreement was entered into. The court notes that no permit for the enclosure was in existence at the time and that the legitimacy of the enclosure involves not the use of the deck but the lawfulness of the addition. Nor is there any evidence in the record that the plaintiffs were ever aware of the presence of the enclosure at the time they entered into the stipulation. Finally, the plaintiffs argue that even if these issues were to be resolved in the Owners' favor, the terms of the agreement prevent its use for any purpose other than the particular action in which it was filed. The court agrees that such is the plain language of the agreement.
The court is unable to determine the relative rights and obligations of the parties one to the other under this agreement. A settlement agreement is a contract between the parties. Griffin v. Planning and ZoningCommission, 30 Conn. App. 643, 650 (1993). "Therefore, the interpretation CT Page 5741-ft of a stipulated judgment, like the interpretation of a contract, is usually a question of fact." Griffin v. Planning and Zoning Commission,
supra 650, citing Gurliacci v. Mayer, 218 Conn. 531, 567 (1991). The interpretation of a contract is a question of law only where the language is definitive and unambiguous. Levine v. Massey, 232 Conn. 272, 278
(1995). (Alternate citations omitted). Town Close Associates v. Planningand Zoning Commission, 42 Conn. App. 94, 108 (1996).
While the language of the agreement is unambiguous in some respects it is ambiguous in others. It would be improper for the court, in its role as a court of appeal, to determine the intent of the parties to that agreement. Ibid. Whether the agreement should be enforced in this proceeding is beyond the proper scope of this court's review. Gagnon v.Municipal Planning Commission, 10 Conn. App. 54, 59 (1987).
The Service Stoop
In Bloom v. Zoning Board of Appeals, supra, the Owners' efforts to maintain a service stoop which they had constructed within the thirty five foot front setback were rejected. That stoop apparently was permanently attached to the building and had a roof. The stoop involved in this case has no roof and is not attached to either the building or the ground in any way. In fact, the stoop is movable.
The Owners argue that the 35 foot setback requirement does not apply to this stoop because the stoop is not a structure, and because the Regulations do not define "structure", the movable nature of the object somehow exempts it from regulation. Some members of the board saw the portability feature as a subterfuge and as an attempt to circumvent the setback requirement. Nevertheless, the Board overruled the Zoning Inspector and included the stoop in its sweeping pronouncement that § 118-800D(1) was ambiguous.
Moreover, it is a question of law as to whether the portable stoop is a structure which is subject to regulation under § 118-230. As stated above, a structure has been defined as "any production or piece of work artificially built up or composed of parts; joined in some definite manner." Hendryx Co. v. New Haven, supra. The court concludes that the portable service stoop is no less a structure simply because it is not attached to the building or the ground.[4]
The Parking Spaces
Section 118-1220 J of the regulations provides in pertinent part as CT Page 5741-fu follows:
 J. "All off-street parking and loading facilities shall be located to the rear of the required front setback line as now or hereafter established. The area between the street line and the front setback line, except for vehicle and pedestrian access ways, shall be landscaped with lawns or other appropriate planting."
This regulation became effective March 1, 1985. The owners claim that diagonal parking spaces or stalls which extend from the easterly facade or front of the building to and through the street right of way of Rowayton Avenue constitute a nonconforming use of the front setback area. They urge the court to consult the record for evidence that these spaces have been in existence since 1985.
The Zoning Inspector's cease and desist order makes reference to a photograph of the front of the building taken in 1991 which shows an open front porch on the east side of the building with three motor vehicles parked parallel to and alongside the porch, "each vehicle facing due south". The record contains photographs taken in 1998 which show the porch removed, and in its former location, the eight diagonal parking spaces.
The Owners point to the testimony of long time residents of the neighborhood to the effect that they remembered cars parking in front of the building for as long as they have been there which would be several years prior to 1985. In addition, there are photographs which apparently predate subsection J which show parking in front of the building. These photographs are unmistakable in what they show. They show only parallel and not diagonal parking. They show, at most, three vehicles and not eight. In fact, while the front porch was in place there could have been no diagonal parking because to do so would have required the vehicles to extend into the travelled portion of Rowayton Avenue. Mr. Griffith, a neighbor stated "People parked in front of the building or somewhere along it." Photographs placed into evidence by the Owners at the hearing show neighboring properties with parallel parking at the curb except where the particular business establishment had its own off street parking lot. They have little probative value.
The Owners make no claim then that they had diagonal parking prior to 1985. They argue instead that parallel parking is the functional equivalent of diagonal parking. A close examination of the former CT Page 5741-fv parallel parking formation reveals that a survey map dated October 8, 1987 shows the front porch with steps roughly in the center of the building. This structure extended beyond the front property line and encroached into the street right of way of Rowayton Avenue and in fact, the traveled portion thereof. Certainly, as to this space, it would have been impossible for vehicles to have parked parallel within the front setback space because that space was occupied by the porch. Both the evidence before the board as well as a simple scaling of the width of the building demonstrate that no more than three automobiles could have parked parallel in front of the building. Thus, the nonconforming parking that predated the 1985 amendment was different both as to number and location, viz: three parallel versus eight diagonal. This was the full extent of the evidence before the board.
The issue which flows from these facts is whether the actual nonconformity can lawfully ripen into the present configuration. "A nonconforming use is merely an existing use the continuance of which is authorized by the zoning regulations." Melody v. Zoning Board ofAppeals, 158 Conn. 516, 519 (1969). To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use or that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use. Lebanon v. Woods,153 Conn. 182, 197 (1965). To be irrevocably committed to a particular use, there must have been a significant amount of preliminary or preparatory work done on the property prior to the enactment of the zoning regulations which unequivocally indicates that the property was going to be used for that particular purpose." Karls v. Alexandria Realty Corp.,179 Conn. 390, 399 (1980). (Alternate citations omitted) Wing v. ZoningBoard of Appeals, 61 Conn. App. 639, 644 (2001).
Implicit in the board's undeclared reason for reversing the Zoning Inspector on this point is a determination that the scope of the use has not been extended or enlarged impermissibly in violation of § 118-800C(1).
"In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) The extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property." Zachs v. Zoning Board of Appeals, supra at 332.
There is scant evidence in the record concerning any of these factors CT Page 5741-fw and certainly the Board did not give explicit consideration to any of them. The Board permitted these parking spaces for the same reason that it permitted the deck enclosure and service stoop, to wit: where there is ambiguity in the regulation the ambiguity must be resolved in the property Owners' favor.
An independent search of the record to determine how, if at all, these factors have been satisfied reveals the following: (1) while the principal use which the parking serves remains unchanged the accessory use of parking has not only virtually tripled in number but in doing so further frustrates the goal of § 118-1220J to maintain the setback area with "appropriate planting". Factor (2) is unchanged as the kind of use is identical. Factor (3) however involves an evaluation of the effect of the eight spaces upon the neighborhood. There is little, if any, evidence on this point except for three color photographs which are unmarked exhibits in the record (stapled to a cardboard with a date of March 13, 1998). These photographs show vehicles parked in the spaces in question with their rear portions extending into the traveled (paved surface of Rowayton Avenue). If those vehicles were transposed onto exhibit 10 it would become apparent that all but a small portion of all eight vehicles would be parked on Rowayton Avenue with only a small portion of the front of the vehicle being parked on the Owners' property. Plaintiffs point out that unless permitted by local ordinance, § 14-251
of the General Statutes prohibits diagonal vehicular parking on any public highway of the state. The record does not indicate that Norwalk has such an ordinance. This court needs no evidence to conclude that any activity which constitutes a violation of the traffic laws of this state would necessarily produce a substantially different effect upon the neighborhood from that which existed prior to the change (parallel parking).
Because the board has acted illegally and in abuse of its discretion in deciding these appeals the plaintiffs' appeal in each case is hereby sustained.
BY THE COURT,
Mottolese, Judge